## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MONÍN BERIO-RAMOS<br><br>     **Plaintiff**<br><br>       **v.**<br><br>GERARDO FLORES-GARCÍA<br><br>     **Defendant** | **CIVIL NO. 13-1879 (PAD)** |

## PLAINTIFF'S POST TRIAL BRIEF

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MONÍN BERIO-RAMOS<br><br>　　Plaintiff<br><br>　　v.<br><br>GERARDO FLORES-GARCÍA<br><br>　　Defendant | CIVIL NO. 13-1879 (PAD) |

**TABLE OF CONTENTS**

　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE**

I.　　INTRODUCTION　　　　　　　　　　　　　　　8　　　-9

II.　　RELEVANT PROCEDURAL BACKGROUD　　　　9　　　-20

III.　　SUMMARY OF ARGUMENTS　　　　　　　　　20

IV.　　PROPOSED FINDINGS OF FACTS　　　　　　　20-　　32

V.　　DISCUSSION OF LAW　　　　　　　　　　　　32　　　-77

　　　　A:  All elements of copyright infringement under the U.S.
　　　　Copyright Law were proved by plaintiff against defendant:　　32
　　　　　　1.  Ownership of a valid copyright and shift of burden
　　　　　　　　of proof to defendant Flores-García by showing
　　　　　　　　copyright.　　　　　　　　　　　　　　　　32
　　　　　　2.  Actual Copying:　　　　　　　　　　　　　42
　　　　　　　　　a.  Flores-García had wide and clear access to Berio's
　　　　　　　　　　　copyrighted work.　　　　　　　　　42
　　　　　　　　　b.  There is substantial similarity between
　　　　　　　　　　　Berio's copyrighted work and Flores-García's
　　　　　　　　　　　accused works, the PPP and the C.L.E. document　45
　　　　B: The defenses to infringement raised by Flores-García do
　　　　not apply in this case:　　　　　　　　　　　　　47
　　　　　　1.  The defenses of merger and "scènes à faire".　　47
　　　　　　2.  Fair use defense:　　　　　　　　　　　　51

a.  Purpose and character of use.                51
b.  Nature of the copyrighted work.              54
c.  Amount and substantiality of the use         55
d.  Effect on the market                         58
3.  Legislative and Eleventh Amendment Immunity Defense   60

C:  Though infringement of copyright need not be
intentional, Flores-García's infringement was
willful.                                         72

D.  All elements of Puerto Rico Moral Author's Rights Act
Infringement by Flores-García were met by Berio.   74

E.  Remedies                                     75


VI.   CONCLUSION                                 77      -80


VII.  APPENDIX

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MONÍN BERIO-RAMOS<br><br>    **Plaintiff**<br><br>    **v.**<br><br>GERARDO FLORES-GARCÍA<br><br>    **Defendant** | **CIVIL NO. 13-1879 (PAD)** |

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

    **Federal Cases**

**Supreme Court**

Baker v. Selden, 101 US 99 (1880)                                                          39

Bogan v. Scott Harris, 523 U.S 44 (1998)                                                   70

Callaghan v. Myers 128 US 617 (1988)                                                       44

Campbell v. Acuff-Rose Music, 510 U.S. 569, 590 (1994)                                     58

Commonwealth of Puerto Rico v. Sánchez Valle, 579 U.S. ___ at page 14 (2016),
decided June 9, 2016                                                                       63

eBay v. MereExchange, 597 US 388 (2006)                                                 62, 76

Ex parte Young, 209 US 123 (1908)                                                          61

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340 (1991)                  32, 39

Harper &. Row v. Nation Enterprises, 471 U.S. 539 (1985)                                   58

Porto Rico v. Rosaly, 227 US 270 (1913)                                                    64

VA. Office for Prot. and  Advoc. v. Stewart, 563 U.S. 247 (2011)      61

**First Circuit**

Acevedo v. Monroig, 204 F.3d 1 (1st Cir. 2000)      65, 66, 70

CMM Cable Rep. Inc. v. Ocean Coast Props., Inc., 97 F.3d. 1504 (1st Cir. 1996)      32

Concrete Mach. Co. v. Classic Lawn Ornaments Inc. 843 F.2d 600 (1st Cir. 1988)      42

Coxcom v. Chaffe, 536 F.3d 101 (1st Cir. 2008)      62

Guillemard-Guinorio v. Contreras-Gómez, 585 F.3d 508 (1st Cir. 2009).      62

Johnson v. Gordon, 409 F3d 12 (1st Cir.2005)      45

Jusino v. Comm., 214 F.3d 34 (1st Cir. 2000)      64

Lotus Dev. Corp. v. Borland Int's, Inc., 49 F.3d 807 (1st Cir. 1995)      32, 33

National Assn. v. Harwood 69 F.3d 622 (69 F.3d 622 1st Cir. 1995)      65, 66

Romero-Barceló v. Hernández Agosto, 75 F.3d 23, (1st Circuit, 1996)      69

Society of Holy Transfiguration v. Gregory, 689 F.3d 29 (1st Circuit 2012)`      33, 35, 42, 52, 54, 56 59

Swarovsky v. Bldg, 704 F.3d 44 (1st Cir. 2013)      62

Situation Management Systems v. ASP Consulting LLC, 560 F.3d 53 (1st Cir. 2009)      11

Sony BMG Music Entertainment v. Tenenbaum, 660 F.3d 487 (1st Cir. 2011)      74

**Other Circuits**

Merkos L'Inyonei Chinuch v. Otsar Sifrei Lubavitch, 312 F. 3d 94 (2nd Cir. 2002)      48

Alexander v. Holden 66 F.3d 62 (4th Cir. 1995)                          70

Atari Inc. v. N. Am. Philips Consumer Elecs. Corp., 672 F.2d 607) (7th Cir. 1982)   42

Bibbero Sys., Inc. v. Colwell Sys. Inc., 893 F.2d 1104 (9th Cir. 1990)   33

Enterprise Mgmt. LTD., Inc. v. Warrick, 717 F.3rd 1112 (10th Cir. 2013)   38, 50

Ets-Hokin v. Skyy Spirits, Inc., 225 F. 3d 1068, 1082 (9th Cir. 2000)   50

United Fabrics Int'l, Inc. v. C & J Wear Inc. 630 F.3d 1255 (9th Cir. 2011)   34

McSurely v. McClellan, 553 F.2d 1277 (DC Cir. 1976)                     70

**District Court**

Elektra Entertainment Group Inc. v. Carter, 618 F. Supp. 2d 89 (D Maine 2009)   62

Emi Mills Music Inc. v. Empress Hotel Inc. 470 F.Supp. 67 (DPR 2006)   62

Universal City Studios Production LLLP v. Bigwood, 1441 F. Supp. 2d 185
(D. Maine 2006)                                                        62

**Puerto Rico cases**

Díaz Carrasquillo v. García Padilla, 2014 TSPR 075                      71

Julio E. Pancorbo et al v. Wometco de Puerto Rico Inc., 115 DPR 495 (1984)   75

People v. Luciano, 83 P.R.R. 551 (1961)                                80

**STATUTES**                                                           **PAGE**

**Federal Statutes**

United States Constitution, Amdt. 11                                   60, 61,
                                                                       62, 63
                                                                       64

Judiciary and Judicial Procedure (Federal Question) 28 U.S.C. § 1331     9

Judiciary and Judicial Procedure (Supplemental Jurisdiction) 28 U.S.C. § 1367     9

U.S. Copyright Act, 17 U.S.C. § 101, et seq. as amended     8, 9, 32
64, 73

**Puerto Rico Statutes**

Author's Moral Rights Act of Puerto Rico, Act No. 55-2012     8, 9,
74, 75

Act No. 96 of July 15, as amended, 31 L.P.R.A. § 1401i et seq.     8, 75

Rule 44.1 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A.
Ap. V, R. 44.1     75

## **OTHER AUTHORITIES**     **PAGE**

Amy Lagenfield, _Legislative Drafting Manual in the Classroom"_,
22 Perspectives: Teaching Legal Res. & Writing 141 (2014).     48

Robert C. Osterberg & Eric C. Osterberg, _Substantial Similarity in_
_Copyright Law,_ , Practicing Law Institute, NYC, 2015     44, 45
46, 47
49

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MONÍN BERIO-RAMOS**<br><br>    **Plaintiff**<br><br>        **v.**<br><br>**GERARDO FLORES-GARCÍA**<br><br>    **Defendant** | **CIVIL NO. 13-1879 (PAD)** |

**PLAINTIFF'S POST TRIAL BRIEF**

TO THE HONORABLE COURT:

COMES NOW the plaintiff MONÍN BERIO-RAMOS and by her undersigned attorneys respectfully alleges and prays as follows:

I.      **INTRODUCTION**

This is a case of copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101 et seq., as amended. Plaintiff Monín Berio-Ramos (Berio) pleaded in the complaint, and subsequently evidenced at trail, that defendant, Gerardo Flores-García (Flores-García) copied, reproduced, distributed and publicly presented and displayed her copyrighted work without her permission and without recognizing her authorship. This in violation of her rights under Sec. 106 of the U.S. Copyright Act, 17 U.S.C. § 106.   Furthermore, Flores-García also incurred in violations, as shown in the trial, to the Author's Moral Rights Act of Puerto Rico, 31 L.P.R.A. § 1401i et seq..  Specifically defendant violated Article 1, 31 L.P.R.A. § 1401i of said law every time he used, reproduced, distributed and publicly presented and displayed plaintiff's work without attributing or recognizing her authorship and also when he mutilated, deformed and altered Berio's work.

8

The U.S.D.C. for the District of Puerto Rico has jurisdiction to adjudicate the above listed substantive law provisions of United States and Puerto Rico  under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Plaintiff seeks from the Honorable Court:

a)  An injunction barring defendant Flores-García from ever copying, using, reproducing, distributing, displaying or presenting again plaintiff's copyrighted work under 17 U.S.C. § 502.

b)  An award for the actual damages suffered by plaintiff under 17 U.S.C. § 504(a) and (b).

c)  An award of costs incurred and reasonable attorney fees under 17 U.S.C. § 505.

d)  An award for actual damages suffered by plaintiff under 31 L.P.R.A. § 1401s

e)  An injunction barring defendant Flores-García from ever copying, using, reproducing, distributing, displaying or presenting again plaintiff's copyrighted work under 17 U.S.C. § 502  and 31 L.P.R.A. § 1401s.

f)  An award of the costs, expenses and attorney fees under 31 L.P.R.A. § 1401s.

## II.   RELEVANT PROCEDURAL BACKGROUND

1.  On November 27th 2013 a *Complaint* was filed by plaintiff against defendants Gerardo Flores-García and the Senate of Puerto Rico for violation of her intellectual property rights under 17 U.S.C.A. § 101 et seq., 31 P.R.L.A. § 1401 et seq., and 31 P.R.L.A. § 1401i  (Docket No. 1).

2.  On November 29th 2013 an *Amended complaint* was filed by plaintiff against the aforementioned defendants, that was answered by defendant Flores-García (Docket Nos. 2 and 8). The Senate of Puerto Rico filed on March 21st 2014, a *Motion to dismiss due to insufficient service of process*. (Docket No. 12).

3. The scheduling Order of March 31st 2014 was vacated and the case reassigned to the Honorable Judge Pedro A. Delgado-Hernández. (Docket Nos. 11, 17, 19 and 29).

4. On April 10th 2014, defendants Flores-García and the Senate of Puerto Rico filed a *Motion for judgement on the pleadings*, which was opposed by plaintiff (Docket Nos. 23 31, and 32)

5. On May 13, 2014, plaintiff filed a *Motion for partial voluntary dismissal of claims against the Senate of Puerto Rico under Rule 41(a)(1)(A)(i) of FRCP* and requested leave to file a *Second amended complaint* in this case against Gerardo Flores-García and the Senate of Puerto Rico. (Docket No. 30).

6. On May 14th, 2014, defendants opposed plaintiff's request for leave to file a *Second amended complaint* (Docket No. 33). They also replied to her opposition to their *Motion for judgement on the pleadings* (Docket No. 34). The Court then ordered plaintiff to reply defendants' Docket No. 33 motion (Docket No. 35).

7. Further on plaintiff submitted on June 14th and June 15th 2014 opposition memoranda (Docket Nos. 40 and 41) to defendants' motions. On July 7th, 2014, defendants filed their reply to these memoranda (Docket No. 44).

8. On August 26th 2014, defendants requested a stay of proceedings pending disposition of their *Motion for judgment on the pleadings* (Docket No. 45) which was granted as per Order dated September 29th 2014 (Docket No. 46).

9. On October 28th 2014 the Court issued a *Memorandum and Order* (Docket No. 47), which denied without prejudice defendants' *Motion for judgement on the pleadings* (Docket no. 23); granted plaintiff's request for voluntary dismissal against the Senate of Puerto Rico and to file a *Second amended complaint* (Docket No. 30) and denied as

"Moot" the Senate of Puerto Rico's motion to dismiss for insufficiency of service (Docket No. 12).  Nevertheless, the Court maintained the discovery stay issued at Docket No. 46 awaiting further developments.

10. On October 31st 2014 the *Second amended complaint* was filed by plaintiff against defendants Gerardo Flores-García and the Senate of Puerto Rico.  Berio requested that the *Complaint* be granted and that judgement for the plaintiff be issued against all defendants, ordering each of the defendants, jointly and/or separately to (a) abstain from distributing, publishing or using her intellectual property as described and alluded to in the *Complaint*  pursuant to the applicable law cited therein; and (b) remove and recover the offensive illegal material over which plaintiff has the exclusive intellectual property from any location in which it has been posted, published, maintained and/or archived without her authorization;  and finally order defendant Flores-García  to pay plaintiff no less than $475,000 as indemnification for damages suffered under the statutory sources described in the *Complaint,*  with costs for the proceeding and lawyer fees in the amount of not less than $10,000.00  (Docket No. 49).

11. Defendant Flores-García answered on November 21st 2014, the *Second amended complaint* (Docket no. 52) and on December 26th 2014, filed a *Motion for judgement on the pleadings* based on legislative immunity, the Eleventh Amendment and lack of congressional authority to abrogate the Eleventh Amendment through the Copyright Act (Docket No. 53).

12. On February 9th 2015 plaintiff filed a *Memorandum in opposition to motion for judgment on the pleadings* which refuted all of defendant Flores-García's allegations and averring that he is personally liable to her for his illegal actions, that he was sued in his personal

capacity and that he is not shielded by legislative immunity as his acts were not "legislative acts" as defined by case law. (Docket No. 60).

13. Defendant Flores-García filed on February 10th 2015, a motion requesting time to answer plaintiff's memorandum and for leave to file excess pages in his reply alleging that he had new matters to discuss (Docket No. 61).

14. The Court ordered defendant Flores-García to identify those "new matters", which he did in motion filed on February 13th, 2015. The Court then ordered plaintiff to reply to the "new matters" identified from (a) to (w) in said motion, informing which of them were newly raised and which of them were not.  (Docket Nos. 62, 63 and 64).

15. On February 25th 2015, plaintiff filed her reply to defendant's Flores-García's motion about the "new matters" that he needed to address, expressing that the allegedly new matters raised by him had been adequately covered by both parties in previous documents filed by them and that the only new matter brought forth by plaintiff is that defendant Flores-García's plagiarism constitutes a crime punishable by penal law (Docket No. 65).

16. Defendant Flores-García filed on March 3rd 2015 a motion requesting the Court to discard plaintiff's motion at Docket No. 65 and grant his motion to reply to plaintiff's memorandum at Docket no. 60. (Docket No. 67).

17. On the same date, the Court denied defendant Flores García's motions under Docket Nos. 61 and 67 (Docket No. 68).

18. On March 17th 2015, the Senate of Puerto Rico answered the *Second amended complaint*, represented by the same attorney that represents in this case defendant Flores García. (Docket No. 70).

19. On July 29th 2015 the Court issued an *Opinion and Order* denying defendant Flores-García's *Motion for judgement on the pleadings* at Docket No. 53, resolving that he is not covered by legislative immunity nor is shielded by the Eleventh Amendment as he was sued in his personal capacity. (Docket No. 76)

20. The Court vacated the discovery stay at Docket No. 45 and ordered the following time table: The parties should confer by August 15th, 2015; discovery is until October 30th, 2015; a joint informative motion is due August 15th, 2015; motions for Summary judgment must be filed not later than November 16th, 2015 and oppositions filed fifteen days thereafter. (Docket No. 78).

21. On August 21st 2015 counsel for the parties met pursuant to the Court's Order at Docket No. 78 and agreed on a discovery schedule which was then informed to The Court (Docket Nos. 83 and 85).

22. Plaintiff clarified to the Court in her *Response to defendants' informative motion on proposed discovery* that the parties had agreed on specific dates for depositions of both Berio and defendant Flores-García; that she had announced Pedro Salazar, Esq., as her expert witness; that it was agreed by both parties that Mr. Salazar would be present at defendant Flores-García's deposition and that his expert report would be submitted afterwards (Docket No. 85).

23. In accordance to the agreed upon discovery schedule, the following discovery requests were conducted:

   a. Defendants Flores-García and the Senate of Puerto Rico served on plaintiff on August 25th 2015 *Defendants' first request for production of documents*, (Docket No. 123, Exh. 1), which was duly answered by Berio on September 21st 2015.

13

**b.** Plaintiff' served on October 4th 2015 Defendant Flores-García a (1) set of interrogatories, (2) a request for admissions and a (3) request for production of documents.  Defendant Flores-García tendered his responses on December 7th 2015.

**c.** Also on October 4th 2015, plaintiff served on the Senate of Puerto Rico a (1) set of interrogatories, (2) a request for admissions and a (3) request for production of documents.  Responses for requests under (1) and (2) were tendered by the Senate of Puerto Rico on December 21st 2015. The request for production of documents was not complied with.

**d.** Plaintiff's deposition was scheduled for October 23rd, 2015.  Plaintiff timely requested that defendant Flores-García be produced to be deposed on any date between October 26th  to the 30th, both dates included, which request was never answered.

**e.** On October 22nd 2015, defendant Flores-García requested that plaintiff's deposition be rescheduled for December 7th  and that his deposition be taken on December 9th. Later on he moved for another change of dates, plaintiff's deposition for December 11th and defendant Flores-García's deposition for December 14th.  Plaintiff always acquiesced to defendants serial rescheduling of the depositions dates out of simple courtesy and in consideration to defendant Flores-García, who is an Appellate Judge, since she never had any conflicts and would have happily adhered to the original schedule whereby all depositions would be over by October 30th 2015.

**f.** On November 7th 2015, after the October 30th deadline had elapsed, defendants served on plaintiff a (1) first set of interrogatories and (2) a second request for production of documents.

g. On December 4th 2015 defendants confirmed by email that plaintiff would be deposed on  December 11th and that defendant Flores-García would be deposed on December 14th.

24. On November 24th 2015, the Court set the pretrial conference for January 22nd 2016 and ordered filing of a Joint Pretrial Conference Report by December 21st 2014 (Docket No. 94).

25. On December 8th 2015, defendants requested the Court for an extension of time to conclude discovery (Docket no. 95).  Plaintiff filed an opposition to this request on December 9th 2015, claiming that she complied with the time table ordered by the Court, that defendants rescheduled the deposition dates, and that the extension of time for discovery requested by defendants was not justified. She informed the Court that she would appear on December 11th for her scheduled deposition and was ready to depose defendant Flores-García on December 14th (Docket No. 96).

26. On December 10th 2015 the Court denied defendants request for extension of time for discovery on Docket No. 95 (Docket No. 100).

27. On December 11th 2015, as had been requested by defendants and confirmed by email on December 4th 2015 by their counsel, plaintiff duly presented herself for her deposition at the Department of Justice (as informed to the Court in her motion at Docket No. 96). Defendants refused to depose her and then and there, announced that defendant Flores-García would not be produced to be deposed on December 14th (as previously agreed and confirmed) unless plaintiff complied with defendants' discovery requests notified after the October 30th deadline.

28. On December 11th 2015, plaintiff filed a motion requesting that defendants be ordered  to produce defendant Flores-García to be deposed by plaintiff, arguing that she had been ready and able to depose him within the time table ordered by the Court and had in good faith agreed to a rescheduling of the original dates as requested by the defendants (Docket no. 101).  On December 11th 2015 the Court denied plaintiff's petition. (Docket no. 102). Thus, plaintiff's good faith and courtesy in acquiescing to defendants' requests to reschedule Mr. Flores-García's deposition resulted in the involuntary loss of her right to depose defendant Flores-García.

29. On December 21st 2015, Berio filed an *Informative motion with her portion of the pretrial Conference Report* within the schedule ordered by the Court in Docket no. 94, informing that even though she forwarded to defendants' counsel well before that date her portion of the Report and that her attorneys met with theirs on December 18th, defendants' counsel alleged that their portion was not ready. (Docket No. 103).

30. On December 22nd 2015, after having elapsed the deadline for filing the joint pretrial conference report, defendants filed an informative motion giving excuses for their delay and tendered a *Joint Proposed Pretrial Conference Report* (Docket nos. 105-105-1), which was filed under Docket No. 107.

31. Plaintiff requested on December 22nd 2015 that the Senate of Puerto Rico be ordered to comply with her request for production of documents which was long overdue.  Her petition was denied by an Order dated December 23rd 2015 (Docket Nos. 108 and 109).

32. Plaintiff filed on December 28th 2015 a *Motion for reconsideration* of the Court's denial of her request that defendant Flores-García be ordered to appear at his deposition at

Docket No. 102,  which was denied by an Order dated December 29th, 2015 (Docket Nos. 110 and 111).

33. On January 5th  2016, the Senate of Puerto Rico filed a *Motion for judgment of the pleadings* alleging lack of jurisdiction under the Eleventh Amendment (Docket No. 112).

34. On January 15th 2016, Berio duly opposed said motion on grounds of lack of sovereignty itself according to the Puerto Rico Supreme Court in <u>*Commonwealth of Puerto Rico v. Sánchez Valle et al*</u>, 192 D.P.R. 594, 2015 T.S.P.R. 25;  affirmed on June 9th 2016 by the U.S. Supreme Court, 579 U.S. ____ (2016).  The Court dismissed the case against the Senate of Puerto Rico without prejudice leaving Mr. Flores-García as the sole defendant (Docket Nos. 114-115).

35. The dismissal of the complaint against the Senate of Puerto Rico moots for the time being and at this stage of the proceedings, the obvious conflict of interest of defendants' legal representation.  It turns out from defendants' answers to the different discovery requests delivered in December that one codefendant, Flores-García, was accusing the other codefendant, the Senate of Puerto Rico, of being the perpetrator of the plagiarism of plaintiff's copyrighted work.

36. The Pretrial Conference was held on January 22nd 2016. (Docket Nos 118-119).

37. Defendant Flores-García filed on February 5th 2016, a *Motion in limine* requesting the exclusion of plaintiff's expert witnesses, Dr. Pedro Salazar, Esq., and Dr. Ramos Duchateau, and their respective Reports, alleging tardiness and surprise (Docket Nos. 122-123).

38. Berio filed her opposition on February 19th 2016, expressing that as per her Docket No. 85 motion her expert witness, Dr. Pedro Salazar Esq., had been announced at the Rule 26

meeting held between the attorneys on August 21st 2015, and that both parties had agreed that his Report would be submitted after defendant Flores-García's deposition, which agreement he later reneged. She also expressed that defendants did not submit any discovery requests regarding expert witnesses or otherwise, other than a request for production of documents petition. (Docket No. 132).   On March 7th, 2016, a *Memorandum and Order* was issued granting the   *Motion in limine,* ordering their testimonies and Reports excluded (Docket No. 141).

39. On March 8th 2016, the Court ordered both parties to submit a joint stipulation on the amount of statutory damages to be paid in the event Berio were to request them and prevail in the case (Docket No. 142).

40. On March 22nd 2016, plaintiff filed her motion in compliance with the aforementioned Order (Docket No. 147). On March 23d 2016, defendant Flores-García filed his motion informing the Court that it was his position that plaintiff was not entitled to any statutory damages under the Copyright Act (Docket No. 149).

41. A *Non Jury Bench Trial* was set to begin on April 5th 2016 (Docket No. 151).

42. On April 3d 2016, plaintiff submitted  a copy of a subpoena served on the Program for Continuing Education requesting it bring to the Court on April 5th the complete records of defendant Flores-García's continuing education credits awarded to him, among other documents (Docket No. 152 and 152-1).

43. On April 3rd 2016, defendant Flores-García filed a motion to quash the subpoena (Docket No. 153) and, less than 3 hours before the trial was scheduled to begin, he filed a *Motion to dismiss for failure to state a claim*, alleging that the nature of plaintiff's copyrighted work could not be protected by the Copyright Act  (Docket No. 155).

44. On April 4th 2016, the Court granted the Docket No. 153 motion to quash (Docket No. 156).  On the same date, the Court denied Flores-García's frivolous last minute attempt to sidetrack the case with his Docket No. 155 *Motion to dismiss* (Docket No. 158).

45. Trial was held on April 5th, 6th and 7th.  On April 5th, opening statements were heard and plaintiff Monin Berio's direct testimony began. Plaintiff's documental evidence was admitted.  On April 6th, plaintiff continued with her testimony and then her witness, Rosa Bell-Bayrón, Esq., also testified.   Plaintiff rested. A Rule 52 motion was argued by defendant Flores-García and denied.  Defendant Flores-García's testimony was heard and his documentary evidence was admitted.  The Court ordered the parties to stipulate the similarities between plaintiff's Exh. 3-A and 12-A by the next day. On April 7th defendant Flores García continued testifying. Defendant rested. The Court ordered plaintiff to submit four documents in a motion as supplements and both parties to submit a joint motion with stipulations regarding items in plaintiff's exhibits 5-A and 12-A. The Rule 52 motion was reargued by defendant Flores-García and the Court reserved judgment. Post-trial briefs were ordered. A post-trial conference was set for April 18th . Minute Entries for the proceedings for each day were posted (Docket Nos. 160, 161 and 162); also defendant's and plaintiff's exhibit lists were posted (Docket Nos. 163 and 164).

46. On April 18th 2016, a *Joint stipulation regarding contents of plaintiff's exhibits 3/3A and 12/12A* was filed (Docket No. 165).   On the same date, plaintiff filed a *Motion in compliance with Order*, with a copy of four documents what were used during the trial to refresh memory (Docket No. 166).

47. The post-trial conference was not held on the original date and transferred to April 22nd (Docket No. 167).  The April 22nd post trial conference was held and the Court ordered that both plaintiff Berio and defendant Flores-García be present at the next conference to be held on May 2nd 2016 (Docket No. 170), later transferred to May 6th 2016 (Docket No. 171).   A second post trial conference was held with the parties' counsel and the parties themselves. Post-trial briefs must be filed by June 30th 2016. (Docket No. 172).

## III.   SUMMARY OF ARGUMENTS

Berio showed at trial that she holds a valid copyright, that the subject matter of her work is copyrightable, that Flores-García had wide and ample access to Berio's work and that he copied many and very substantial parts of her work verbatim, or almost verbatim. There is more than enough substantial similarity between her protected work and Flores-García's. She also proved that her U.S Copyright actions against Flores-García, as well as the Puerto Rico Moral Author's Rights Law, supra, cannot be set aside as not actionable by Flores-Gacía's defenses on immunity, fair use, merger or any other. Berio proved that Flores-García not only infringed and mutilated Berio's copyrighted work, but that he did it intentionally, without authorization or attribution.

## IV.   PROPOSED FINDINGS OF FACTS

1. Plaintiff Monín Berio is a lawyer with  45 years' experience.  She has worked in the field of Legislative Technique for over 30 years and has had formal academic studies in that field at the University of London, Tulane University and the Italian School of Legislation and Legislative Technique, among other institutions.  She taught a course on Legislative Technique Process at the Interamerican University Law School for many years and has been a lecturer in the field in many conferences and seminars, including for the "Continuing Legal Education Program" of the Puerto Rico Supreme Court. (Plaintiff's Exh. 1-A "Monín Berio Ramos' resume"); (Plaintiff's Exh. 2 "Visting Fellowship 2010-2011 University of London") – Transcript 4/5/16, Berio from page 15- line 25 to page 21-line 14.

2. In the course of her professional activities she authored a work titled "Curso de Técnica Legislativa"[1].  She registered that work at the Puerto Rico  Intellectual Property Registry on January 31st 2008 (under registration  number 08-039 Volume TD, Folio 039) and the U.S. Copyright office on May 1, 2013 (under registration number TXu 1-877-324) . (Exh. 4-A "Intellectual Property Registry – Commonwealth of P.R."); (Exh. 6 "Certificate of Registration"). – Transcript 4/5/16, Berio from page  23-line 18 to page   27- line 4; Transcript 4/6/16 Bell-Bayron page 63 line 23 to page 64 line 17.

3. Berio published and used her work in the courses she taught at Interamerican University Law for several years.  She also used that work on her conferences and seminars on this subject. Plaintiff's Exh. 1-A "Monín Berio Ramos' resume". Transcript 4/6/16 Berio page 31 line 12-14 to page 33- line 24; Transcript 4/6/16 Bell-Bayrón page 53 line 23 to page 54 line 7.

4. The copyrighted work contains a textual section and  two sections titled:
   a. "Checklist Guidelines for the Preparation and Proofreading of a Draft Bill or the Revision of an Amendatory Bill of Law" (Guía para la Elaboración y Cotejo de un Anteproyecto o para la Revisión de un Proyecto de Ley Enmendatoria).
   b. "Checklist Questionnaire for the Initial Research Stage in the Preparation of a Draft Bill" (Cuestionario para la etapa inicial de Investigación en la Elaboración de un Anteproyecto de Ley).

   These two latter sections are the ones that Flores-García infringed.

   (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course"). Transcript 4/5/16, Berio page 31 – line 2 to line 16; Transcript 4/6/16 Bel-Bayrón page 61 line 14-21..

5. These two sections are very important parts of the work as a whole and their integrity are essential to said work. (Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course"). Transcript 4/5/16, Berio page 36 line - 23 to page page 37 – line 15; Transcript 4/6/16 Berio page 32 – line 23 to page 34 – line 10.

---

[1] Plaintiff filed on April 18th 2016, the "Curso de Técnica Legislativa" (Course on Legislative Technique) used to refresh memory during the trial  pursuant to the Court's instructions on hearing date 5/7/16 transcript page 69- line 11 to page 75- line 6. (Docket No. 166).   It bears mentioning that it contains clear copyright notices and those in the relevant two sections where shaved from the copies used in the Congress' booklet when it was being put togheter.

6.  The copyrightable material in Berio's works are the original texts. Plaintiff Berio does not claim any copyright over blank lines and in checkmark boxes that accompany the original texts. Transcript 4/5/16 Berio page 47 line 3 to 4/6/16  page 48 – line 22.

7.  Berio's copyrighted work, and the two sections underlying this case, constitute an original work of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced or otherwise communicated.   Thus, Berio owns a valid copyright over the work titled "Curso de Técnica Legislativa"  which contains two relevant sections contained therein listed above. (Exh. 4-A "Intellectual Property Registry – Commonwealth of P.R."); (Exh. 6 "Certificate of Registration"); (Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course"). Transcript 4/5/16 Berio page 31- line 9 to page 36 – line 13; Transcript 4/6/16 Bell-Bayrón page 59 line 10-16.

8.  Ms. Berio's work shows the expenditure on her part of a stupendous amount of intellectual effort and originality in the expression of the ideas underlying its subject matter, i.e., the Legislative Technique. Transcript 4/5/16 Berio page 32 line -17 to page 36 line- 13; Transcript 4/6/16 Bell-Bayrón page 59-line 10 to 20.

9.  Plaintiff's copyright registration is prima facie evidence of copyrightability. Thus, defendant Flores-García had the burden of proof to prove that she held an invalid copyright. He did not meet this burden at all in his testimony nor did he use any expert witness to prove this. There is no evidence on the record, testimonial or otherwise, to prove that plaintiff's work is not copyrightable material. (Transcript 4/6/16 Flores-García at page 96 – line 1 to Transcript of 4/7/16, page 58 – line 18).

10. Ms. Berio, along with her colleague Rosa Noemí Bell-Bayrón, organized an International Congress on Legislative Technique and the Quality of the Law held at facilities of the Capitol of Puerto Rico on April, 2008. Transcript 4/5/16 Berio page 27 – line 6 to page 28- line 11; Transcript 4/6/16 Bell-Bayrón page 54 line 8 to line 25.

11. The Puerto Rico House of Representative was a co-sponsor of the Congress along with Interamerican University Law School and other entities. Transcript 4/5/16 Berio page 38 line -20 to page 39 – line 3; Transcript 4/6/16 Bell-Bayrón page 59- lines 5-6.

12. The materials distributed in a booklet form to all attendees of the Congress contained the two sections of Ms. Berio's copyrighted work titled (1) "Checklist Questionnaire for the Initial Research Stage in the Preparation of a Draft Bill"and (2) "Checklist Guidelines for the Preparation and Proofreading of a Draft Bill or the Revision of an Amendatory Bill of Law".  (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and

Guidelines and Checklist, etc. of the Legistlative Technique Course"). Transcript 4/5/16 Berio page 28- line 13 to page 31- line 4; Transcript 4/6/16 Bell-Bayrón, page 56 line 3-7.  Refer to Docket No. 166[2].

13. Ms. Berio gave a lecture in the Friday, April 18th 2008 afternoon session of the Congress in which she discussed the contents of the two sections of her copyrighted work. Transcript 4/5/16 Berio page 38 line 5;  Transcript 4/6/16 Bell-Bayrón page 58 line 10-11, page 60 line 10 to 14.

14. Ms. Berio expressly communicated her ownership and authorship of the two sections of her copyrighted work while giving her conference. Transcript 4/5/16 Berio page 37 – line 18; 4/6/16 Berio page 34 line 15 to page 35 – line 25; page 43 –line 4-6; 4/6/16 Bell-Bayrón page 60 line 20 to page 61- line 2.

15. Defendant Flores was a House of Representative employee at the time of the Congress. Transcript 4/6/16 Flores page 102 line 23-25.

16. Defendant Flores, at the time of the Congress, worked as legislative aide in the Office of Advisors to the Speaker of the House of Representatives. Transcript 4/6/16 Flores page 102 line 23-25 and page 152 line 21 to 25.

17. Defendant Flores attended the Congress and, specifically; was present when Ms. Berio gave her conference. (Docket No. 166)[3] Transcript 4/5/16 Berio page 38 line 3 to line 17; Transcript 4/6/16 Bell-Bayrón page 55 line 2 to page 57 line 17 and page 58 line 7 to line 25.

18. Defendant Flores-García, being an attendant at the seminar, had a copy of the Congress material containing Ms. Berio's copyrighted work, which was given to all the attendants on the first day of the Congress. (Docket No. 166)[4] Transcript 4/5/16 Berio page 38 line 3 to line 17; Transcript 4/6/16 Bell-Bayrón page 56 line 22 to page 57 line 17.

19. On 2011 Defendant Flores was the Director of the Office of Legal Counsel of the Senate of Puerto Rico. Transcript 4/6/16 Berio page 45 – line 2 to 11, 4/6/16 Flores page 107 line 22-24.

---

[2] On April 18th 2016, plaintiff filed the booklet  distributed at the First Congress, April 16th through the 18th, 2008,  titled "I Congreso Internacional de Técnica Legislativa y Calidad de la Ley" (First International Congress on Legislative Technique and the Quality of the Law) used to refresh memory during trial  pursuant to the Court's instructions on hearing date 5/7/16 transcript page 69 –line 11 to page 73- line 20 .  (Docket No. 166).

[3] Plaintiff filed on April 18th 2016 the "Attendance List" of the "I International Congress on Legislative Technique and the Quality of the Law"  held April 16th through the 18th 2008, used to refresh Flores-García's memory during trial pursuant to the Court's instructions on hearing date 5/7/16, transcript page 69 – line 11 to page 75 – line 6. (Docket No. 166).

[4] See footnote No. 2.

20. Defendant Flores, in the 2009 – 2012 periods was not an employee of the Senate.  He worked during that period as a Senate contractor. He had the position of Director of Advisors to the President of the Senate. Transcript 4/6/16 Flores page 107 lines 22-24 and page 170 line 15 to page 171 line 16.

21. On 2011 Defendant Flores-García presented in at least two occasions a Power Point Presentation (from now on sometimes referred to as  "PPP") titled "Drafting, Legislative Technique, and the Quality of the Law" (Redacción, Técnica Legislativa y Calidad de la Ley). (Exh. 5A "Cert. translation of Power Point Presentation of Drafting, Legislative Technique, etc.".). Transcript 4/6/16 Flores-García page 159 lines 5 to 9.

22. The PPP copied substantial parts of Ms. Berio's copyrighted work, namely the sections included in the 2008 Congress materials titled "Checklist Guidelines for the Preparation and Proofreading of a Draft Bill or the Revision of an Amendatory Bill of Law" (Guía para la Elaboración y Cotejo de un Anteproyecto o para la Revisión de un Proyecto de Ley Enmendatoria) and "Checklist Questionnaire for the Initial Research Stage in the Preparation of a Draft Bill" (Cuestionario para la etapa inicial de Investigación en la Elaboración de un Anteproyecto de Ley). (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course"). Transcript 4/5/16 Berio page 44 line 13 to page 121 line 12. Transcript 4/6/16 Bell-Bayrón page 61 line 14 – 21.

23. On October 7th 2011, the Puerto Rico Supreme Court Office of Continuing Legal Education (from now on C.L.E.) received a document titled "Drafting, Legislative Technique and Quality of the Law" (Redacción, Técnica Legislativa y Calidad de la Ley) That document bears on its first page Defendant Flores-García's name and title, on the second page, and occupying the whole page a list of his credentials, and the remaining 3 pages a list of 42 questions which are, for all practical purposes, literal copies of Ms. Berio's Checklist Questionnaire's 43 questions and in the same order that they appear in said Questionnaire. (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course" and Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc."). (Docket No. 165).

24.  The PPP contains many sections copied directly from plaintiff's copyrighted work to the extent that a grammatical error was also copied. (Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course")  and (Exh. 5-A "Cert. translation of Power Point presentation of

Drafting Legislative Technique, etc".). Transcript 4/5/16 Berio page 44 line 13 to page 121 line 12, at page 118 lines 10-13. Transcript 4/6/16 Bell-Bayrón page 61 line 14 – 21.

25.  The PPP is 92 slides long and 62 of those slides contain materials copied from plaintiff's copyrighted work.  (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course") and (Plaintiff's Exh. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc.).  Transcript 4/5/16 Berio page 44 line 13 to page 121 line 12; Transcript 4/6/16 Bell-Bayrón page 61 line 14 – 21.

26. The copying in the PPP and the C.L.E. document was so extensive that it rendered substantial parts in both of them substantially similar to that of the plaintiff's copyrighted work. (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course", Exh. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc." and Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.''). Transcript 4/5/16 Berio page 44 line 13 to page 121 line 12.

27. Defendant Flores appropriated plaintiff's copyrighted work in preparing the PPP and the C.L.E. document.  Berio did not authorize the use of her copyrighted work nor credit was given to her in neither offending documents. (Plaintiff's Exh. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc."; Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.") Transcript 4/5/16 Berio page 127 – lines 20 to 25; Transcript 4/6/16 Bell-Bayrón page 62 lines 2-3, page 63 lines 1 to 19.

28. The record showed similarities between the plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course", Exh. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc." and Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.".  The following table details all the similarities with  a cross reference to Berio's testimony about said similarities.

**TABLE COMPARING THE SIMILARITIES BETWEEN BERIOS (COPYRIGHTED) WORK (EX. 3A) AND FLORES PPP (EX. 5A) AND FLORES CLE DOCUMENT (EX. 12A) WITH CROSS REFERENCES TO THE TRIAL TRANSCRIPT**

| BERIOS WORK (EX. 3A) | PPP (EX. 5A) | CLE DOC. (EX. 12A) | TRANSCRIPT 4/5/16 |
|---|---|---|---|
| CHECKLIST | | | |

| | | | |
|---|---|---|---|
| P. 1 question 1 | P. 18 | P. 4 question 1 | P. 46 |
| P. 1 question 2 | P. 19 | P. 4 question 2 | P. 46 |
| P. 1 question 3 | P. 20 | P. 4 question 3 | P. 46 |
| P. 2 question 1 | P. 21 | P. 4 question 4 | P. 47 |
| P. 2 question 2 | P. 16 | P. 4 question 5 | P. 47 |
| P. 2 question 3 | P. 16 SEC. A | P. 4 question 6 | P. 47 |
| P. 2 question 4 | P. 16 SEC. B | P. 4 question 7 | P. 48 |
| P. 2 question 5 | P. 16 SEC. C | P. 4 question 8 | P. 48 |
| P. 2 question 6 | P. 16 SEC. D | P. 4 question 9 | P. 49 |
| P. 2 question 8 | P. 16 SEC. E | P. 4 question 10 | P. 49 |
| P. 2 question 9 | P. 16 SEC. F | P. 4 question 11 | P. 50 |
| P. 2 question 10 | P. 16 SEC. G | P. 4 question 12 | P. 50 |
| P. 2 question 11 | P. 16 SEC. H | P. 4 question 13 | P. 51 |
| P. 2 question 12 | P. 16 SEC. I | P. 4 question 14 | P. 51 |
| P. 2 question 13 | P. 16 SEC. J | P. 4 question 15 | P. 52 |
| P. 2 question 14 | P. 16 SEC. K | P. 5 question 16 | P. 52 |
| P. 2 question 15 | P. 16 SEC. L | P. 5 question 17 | P. 53 |
| P. 2 question 16 | P. 16 SEC. M | P. 5 question 18 | P. 53 |
| P. 3 question 1 | P. 16 SEC. N | P. 5 question 19 | P. 54 |
| P. 3 question 2 | P. 22 | P. 5 question 20 | P. 54 |
| P. 3 question 3 | P. 23 | P. 5 question 21 | P. 55 |
| P. 3 question 4 | P. 24 | P. 5 question 22 | P. 55 |
| P. 4 question 1 | P. 25 | P. 5 question 23 | P. 56 |
| P. 4 question 2 | P. 26 | P. 5 question 24 | P. 56 |
| P. 4 question 3 | P. 27 | P. 5 question 25 | P. 56 |
| P. 5 question 1 | P. 28 | P. 5 question 26 | P. 56 |
| P. 5 question 2 | P. 29 | P. 5 question 27 | P. 57 |
| P. 5 question 3 | P. 30 | P. 5 question 28,29 | P. 57 |
| P. 5 question 4 | P. 44 | P. 6 question 42 | P. 57 |
| P. 6 question 1 | P. 31 | P. 5 question 30 | P. 58 |
| P. 6 question 2 | P. 32 | P. 6 question 31 | P. 58 |
| P. 6 question 3 | P. 33 | P. 6 question 32 | P. 59 |
| P. 7 question 1 | P. 34 | P. 6 question 33 | P. 59 |
| P. 7 question 2 | P. 35 | P. 6 question 34 | P. 59 |
| P. 7 question 3 | P. 36 | N/A | P. 62 |
| P. 8 question 1 | P. 37 | P. 6 question 35 | P. 62 |
| P. 8 question 2 | P. 38 | P. 6 question 36 | P. 62 |
| P. 8 question 3 | P. 39 | P. 6 question 37 | P. 63 |
| P. 8 question 4 | P. 40 | P. 6 question 38 | P. 63 |
| P. 9 question 1 | P. 41 | P. 6 question 39 | P. 63 |
| P. 9 question 2 | P. 42 | P. 6 question 40 | P. 63 |
| P. 9 question 3 | P. 43 | P. 6 question 41 | P. 64 |
| **BERIOS WORK (EX. 3A)** | **PPP (EX. 5A)** | **CLE DOC. (EX. 12A)** | **TRANSCRIPT 4/5/16** |
| **BERIOS WORK (EX. 3A)** | **PPP (EX. 5A)** | **CLE DOC. (EX. 12A)** | **TRANSCRIPT 4/5/16** |
| **GUIDELINES** | | | |
| P. 3 Boxes 16 to 18 | P. 50 Bullets 3 to 5 | | P. 69 |

| | | | |
|---|---|---|---|
| P. 2 Line 19 | P. 51 Bullet 1 | | N/A |
| P. 2 Line 23 | P. 51 Bullet 2 | | N/A |
| P. 2 Line 26 | P. 51 Bullet 3 | | N/A |
| P. 4 Lines 7,9,10 | P.51 Bullets 4,5 | | PP. 70-71 |
| | | | |
| P. 4 Lines 11,12,13,15 | P.52 Bullets 1,2,3,4 | | PP. 72-76 |
| P. 4 Lines 18 to 27 | P.53 Bullets 1 to 3 | | N/A |
| P. 5 Lines 4,6 to 9 | P. 54 Bullets 1 to 5 | | PP. 77-78 |
| P. 5 Lines 11 to 17 | P. 55 Bullets 1 to 4 | | PP. 83 to 85 |
| P. 5 Lines 18,20 to 22 | P. 56 Bullets 1 to 2 | | P. 84 |
| P. 5 Lines 23 to 27 | P. 57 Bullets 1 to 4 | | PP. 85 to 87 |
| P. 6 Lines 1,5,7 | P. 58 Bullets 1,2,4 | | N/A |
| P. 6 Lines 14 to 16 | P. 59 Bullets 2 to 4 | | PP. 89-90 |
| P. 6 Lines 19 to 23 | P. 60 Bullets 1 to 5 | | PP. 90-91 |
| P. 6 Line 27 | P. 61 Bullet 1 | | PP. 91-92 |
| P. 8 Lines 30-31 | P. 62 Bullets 1-2 | | PP. 93-94 |
| P. 9 Lines 1,3 | P. 62 Bullets 3-4 | | PP. 93-94 |
| P. 9 Lines 4,5,6,8 | P. 63 Bullets 1 to 4 | | PP. 94-95 |
| P. 9 Lines 10,11,13,14,17,18 | P. 64 Bullets 1 to 5 | | PP. 96-98 |
| P. 9 Line 28 | P. 65 Bullet 1 | | PP. 99-101 |
| P. 10 Line 2 | P. 64 Bullet 5 | | PP. 96 to 98 |
| P. 10 Lines 16, 19-21 | P. 66 Bullets 1-2 | | PP. 101-102 |
| P. 12 Lines 5, 7to 12, 13, 26-27 | P. 67 Bullets 1 to 4 | | N/A |
| P. 13 Lines 3,25,27 | P. 68 Bullets 1 to 3 | | N/A |
| P. 14 Lines 14 to 18 | P. 69 Bullets 1 to 3 | | PP. 103-105 |
| P. 14 Lines 19 to 27 | P. 70 Bullets 1 to 4 | | N/A |
| P. 14 Line 28 | P. 71 Bullet 1 | | N/A |
| P. 15 Lines 1, 2, 13 | P. 71 Bullets 2 to 4 | | N/A |
| P. 15 Lines 16 to 22 | P. 72 Bullets 1 to 2 | | N/A |
| P. 15 Lines 23 to 30 | P. 73 Bullets 1 to 7 | | PP. 105-107,114 |
| P. 15 Line 1 | P. 73 Bullet 8 | | PP. 105-107,114 |
| P. 16 Lines 2 to 9 | P. 74 Bullets 1 to 7 | | PP. 110,112-113 |
| P. 16 Lines 10 to 19 | P. 75 Bullets 1 to 8 | | N/A |
| P. 16 Lines 21 to 28 | P. 76 Bullets 1 to 8 | | N/A |
| P. 17 Lines 1 to 6 | P. 76 Bullets 9 to 14 | | N/A |
| P. 17 Lines  7 to 13 | P. 77 Bullets 1 to 8 | | N/A |
| P. 17 Lines  14 to 21 | P. 78 Bullets 1 to 5 | | P. 118 |
| P. 17 Lines 22 to 27 | P. 79 Bullets 1 to 5 | | P. 119 |
| P. 17 Lines 28-29 | P. 80 Bullet 1 | | P. 120 |
| P. 18 Lines 1 to 7 | P. 80 Bullets 2 to 6 | | P. 120 |
| P. 18 Lines 8 to 13 | P. 81 Bullets 1 to 5 | | N/A |
| P. 18 Lines 14 to 19 | P. 82 Bullets 1 to 5 | | N/A |
| **BERIOS WORK (EX. 3A)** | **PPP (EX. 5A)** | **CLE DOC. (EX. 12A)** | **TRANSCRIPT 4/5/16** |

29. The PPP was given to the Senate's employees, staffers and contractors as part of their job requirements.  Transcript 4/5/16 Berio page 30 line 22-24; Transcript 4/6/16 Flores page 122 line 22 to 25.

30. The amount and substantiality of the copyrighted work that was copied and used is overwhelming.  (Plaintiff's Exh. 3-A "Certified translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legistlative Technique Course") and (Plaintiff's Exh. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc.) and (Plaintiff's Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.").  Transcript 4/5/16 Berio page 44 line 13 to page 121 line 12. Transcript 4/6/16 Bell-Bayrón page 61 line 14 – 21.

31. The copying and use of the copyrighted material had a substantial and detrimental effect on the market for and the value of plaintiff Berio's copyrighted work. (Plaintiff's Exh. 7-a "Cert. translation of BiblioServices Quote 7105" and Exh. 8-A "Cert. translation of BiblioServices Quote 85774") Transcript 4/5/16 Berio at page 122 line 22 to page 124 line 20; page 130 line 1 to page 130-line 7.

32. The fact that defendant Flore-García  copied Ms. Berio's work is proven by:

a.The PPP bears his name as its author in the first and last pages.  A more definite claim of authorship than that cannot be even conceived. (Exh. 5A "Certified translation of Power Point Presentation of Drafting Legislative Technique, etc.") Transcript 4/5/16 Berio page 40 line 12, page 43 line 3; Transcript 4/6/16 Bell-Bayrón, page 61 line 5 to page 63 line 19.

b.On the C.L.E. document Flores-García not only claims its authorship in the title page but goes on to prominently splash his professional credentials and experience in the field of Legislative Technique in the second page of the 5 pages long document. (Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.").  Transcript 4/5/16 Berio page 144 line 18; Transcript 4/6/16 Flores page 171 line 17 to page 177- line 25.

c.Flores-García received the copyrighted materials at the 2008 Congress. Refer to attendance list (Docket No. 166)[5].  Transcript 4/5/16 Berio page 30 line 14-16, page 31 line 12-13 and page 36 line 18-20; Transcript 4/6/16 Bell-Bayrón page 56- line 3.

---

[5] See footnote No. 3

.   d. Flores-García was present at Ms. Berio's lecture as evidenced in the House of Representative attendance records.   (Docket No. 166[6]).  Transcript 4/5/16 Berio page 38 line 3-17; Transcript 4/6/16 Bell Bayrón, page 56 line 22 to page 58 line 25; Transcript 4/6/16 Flores page 151 line 1 to page 154 line  4.

e. Having access to the copyrighted work and reproducing it in such wholesale manner renders his self-serving and disingenuous  protestations of "I did not do it" totally incredible. Transcript 5/6/16 Flores page 129 line 24 to page 129 line 4.

f. Flores-García was the Office of Advisors director.  He chose the C.L.E. courses' subject matter, he presented the courses he himself prepared and had the PPP posted in the Senate webpage. (Transcript 4/6/16 Berio page 43 line 10 to 21; Transcript 4/6/16 Bell-Bayrón page 65 line 23-25; Transcript 4/6/16 Flores page 126 line 11 to 18.

g. Defendant Flores-García, as Director of the Office of the Advisors to the President of the Senate of Puerto Rico, knew that the PPP was uploaded to their website and permitted it to remain in the internet until January 2014, after plaintiff Berio requested it be downloaded. Transcript 4/5/16 Berio page 128 line 1 to page 129 line 12; Transcript 4/6/16 Bell-Bayrón page 65 line 23-25.

h. The PPP was taken down from the Senate webpage at Flores-García's request The Senate, in fact, complied with Flores-García's request at some point in late 2013.   If he was not author, as he would claim after his unauthorized appropriation was exposed, he would not have any standing in requesting his PPP to be taken down. Transcript 4/5/16 Berio page 128 line 1 to page 129 line 12; Transcript 4/6/16 Bell-Bayrón page 65 line 23-25.  (Docket No. 166)[7]

i. Flores-García's protestations of "I did not do it" lack of any credibility are further buttressed when he pleaded total ignorance as to who prepared the PPP and the CLE.  If he did not do it, yet gave at least conferences using Berio's work, he acted with willful blindness and complete disregard for copyright infringement.  Furthermore, he submitted, or allowed to be submitted the C.L.E. document with his name as the author and with his biography. 4/6/16 Flores page Flores page 171 line 17 to page 177- line 25.

---

[6] See footnote No. 3

[7] Plaintiff filed on April 18th 2016 a letter sent by Flores-García to the President of the Senate of Puerto Rico dated August 20th 2013, used to refresh Flores-García's memory during trial pursuant to the Court's instructions on hearing date 5/7/16, transcript page 69l line 11 to page 75 line 6. Docket No. 166.

j.Flores-García's explanation that his name appears in the PPP because he was the "speaker" goes against all standard practice. (Exh. 5A "Certified translation of Power Point Presentation of Drafting Legislative Technique, etc.")  Transcript 4/6/16 Berio page 37 lines 1-2. Transcript 4/6/16 Bell-Bayrón page 63 line 10-14.

k.Flores-García again disingenuously pleaded complete ignorance as to why his name and curriculum appear in 2 of the 5 pages of the C.L.E. document. (Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.").  Transcript 4/6/16 Flores page 171 line 17 to page 177- line 25.

l.The mendacity of Flores-García's claim that his name name appears on the PPP because he was the "speaker",  is exposed by the fact that his name appears in the same place in the C.L.E. document , and there he was not a "speaker". If he looks line and author, behaves as an author, sounds like an author, and seeks C.L.E. credits as the author, it is because he is indeed the author. (Plaintiff's Exh. 5A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc.) and (Plaintiff's Exh. 12-A "Cert. translation of Supreme Court Stamped "Drafting, Legislative Technique, etc.").

l.Flores-García is simply asking the Court to believe what no rational person and even less the professional audiences of the PPP, anywhere, under any normal circumstances, would believe.

32.    Berio suffered various damages arising from the unauthorized use of her work by Flores-García in using it for C.LE. lectures and his  posting of the PPP in the Senate webpage.  She also suffered damages by the unauthorized use of her work in the C.L.E. document.  Furthermore, Berio suffered damages of lack of attribution and in the mutilation and distortion of her work. Transcript 4/5/16 Berio page 121 line 11-22, page 122 line 7 to page 125.Transcript 4/6/16 Berio page 36 line 23 to page 37 line 25; Bell-Bayrón page 62 line 1-5 and page 63 line 19-20 and page 66 line 1 to page 67 line 1.

33.    Berio's teaching activities at Interamerican University Law School was adversely affected due to defendant Flores-García misappropriation of her copyrighted works. Berio's loss of teaching income in this institution is of at least $4,000.- per year. Transcript 4/5/15 Berio page 134 line 19 to page 135 line 15; Transcript 4/6/16 Bell-Bayrón page 66 line 24 to page 67 line 1.

34.     Berio also  had to cease giving professional lectures due to defendant Flores-García misappropriation of her copyrighted works. Berio's loss of income an estimated $6,000.00 per year. Transcript 4/5/16 Berio page 134 line 14 to page 135 line 15;  line Transcript 4/6/16 Bell-Bayrón page 66 line 24 to page 67 line 1.

35.     The planned commercial publication of her book, encompassing the copyrighted material used in the PPP and the C.L.E. document by Flores-García, had to be aborted due to defendant Flores-García misappropriation of her copyrighted works. (Plaintiff's Exh. 7-A "Cert. translation of BiblioServices Quote 7105" and Exh. 8-A "Cert. translation of BiblioServices Quote 85774") Transcript 4/5/16 Berio pages 130 line 11 to page 134 line 18.

36.     Berio lost her opportunity to attend the University of London on a Legislative Technique Fellowship.  This has a loss of opportunity cost value that the Court will determine at its discretion. (Plaintiff's Exhibit 11-A "Cert. translation of letter dated March 15th 2010") Transcript 4/5/16 Berio page 135 line 1 to page 137 line 24.

37.     Berio lost her opportunity to work and collaborate with "Microjuris Co." in the development and distribution of "on demand" courses and a "blog". This represents an estimated loss of income of $4,000.00 a year. (Plaintiff's Exhibit 9-A "Cert. translation of E mails of October 17[th]-18[th] 2013" and Exh. 10-A "Cert. translation of E mail of August 29th 2015").  Transcript 4/5/16 Berio page 138 line 8 to 142 line 25.

38     Ms. Berio has a right to actual damages.  Her estimate of lost book sales are 500 copies at $50- each. Her lost revenues gross are an estimated $25,000.00.  According to her testimony, the cost of publishing her book from 2013 to the present has increased $3,000.00.  (Plaintiff's Exh. 7-A "Cert. translation of BiblioServices Quote 7105" and Exh. 8-A "Cert. translation of BiblioServices Quote 85774"). Transcript 4/5/16 Berio page 40 line 15-20 and page 44 line 1-7.

39.     Ms. Berio's physical and emotional health suffered as a result of the misappropriation of her lifelong work by defendant Flores-García but also due to the inherent stresses associated with the judicial process, which she would not have gone through is it were not for defendant's conduct. This amount in damages is for the Court to quantify.  Transcript 4/5/16 Berio page 125 line 1 to page 127 line 17; 4/6/16 Bell-Bayrón, page 66, lines 11 to 13.

40.     There are more than sufficient factual elements on the record to credit that Mr. Flores-García copied and infringed plaintiff Berio's copyrighted work.

## V.     DISCUSSION OF LAW

## A.  All elements of copyright infringement under the U.S. Copyright Law were proved by

## Plaintiff against Defendant.

Pursuant to 17 U.S.C § 101 et seq., as amended, and as stated in Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991), to establish a valid claim of copyright infringement Berio showed *"(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original."* To comply with the first requisite Berio showed *".. that the work as a whole is original and that the plaintiff complied with applicable statutory formalities."* CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996). For the second requisite, that related to copying, Berio proved that Flores-García *"copied plaintiff's copyrighted work as a factual matter"* and that the copying *"was so extensive that it rendered the offending and copyrighted works substantially similar."* Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995). Flores raised various defenses, some very untimely, but he did not provide evidence any evidence whatsover to support any of them.

### 1. Ownership of a valid copyright and shift of burden of proof to Defendant Flores-García by showing copyright.

For the requisite of showing ownership of a valid copyright Plaintiff must show *".. that the work as a whole is original and that the plaintiff complied with applicable statutory formalities."* CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996). In Feist Public's Inc., supra, at 346,  the Court explained what the term "originality" entails in Copyright Law:

*"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied other works), and that it possesses at least some minimal degree of creativity. 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B]*

*(1990) (hereinafter Nimmer). To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. Id., § 1.08[C][1]. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, <u>346\*346</u> assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable. See <u>Sheldon v. Metro-Goldwyn Pictures Corp., 81 F. 2d 49, 54 (CA2 1936)</u>."*

In 2012, the First Circuit Court again stated that the bar of originality required for a work to be considered a matter of copyright is set "quite low". See <u>Society of Holy Transfiguration v. Gregory</u>, 689 F.3d 29, 47(1st Cir. 2012):

The Copyright Act provides that "[c]opyright protection subsists ... in original works of authorship." 17 U.S.C. § 102(a). Assessing whether a work is original is a matter of law. *<u>Yankee Candle Co. v. Bridgewater Candle Co.,</u> 259 F.3d 25, 34 n. 5 (1st Cir.2001)*. Courts assessing the applicability of the Copyright Act's protections to allegedly unique works frequently note that the "originality" bar is set quite low. *See, e.g., <u>Feist,</u> 499 U.S. at 345, 111 S.Ct. 1282* ("[T]he requisite level of creativity [required to show originality] is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark...."); <u>*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,* 618 F.3d 417, 430 (4th Cir.2010)</u> ("Establishing originality implicates only a light burden.").

*[A] certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid.*" <u>Lotus Dev.</u>, 49 F.3d at 813 (emphasis in original) (quoting <u>Bibbero Sys., Inc. v. Colwell Sys., Inc., 893 F.2d 1104, 1106 (9th Cir. 1990)</u>). Berio produced a certificate of registration from the Register of Copyrights for the work she alleged was infringed. Exhibit 6 (U.S. Copyright Office Certificate of Registration). The certificate is dated May 1st 2013 and bears the registration number TXU 1-877-324. The protected work was completed on the year 2008. It is a literary work titled "<u>Curso de Técnica Legislativa</u>" (<u>Course on Legislative Technique</u>) and comprises three parts[8]. The first one is an in depth discussion on legislative technique, norms and requirements, with emphasis in the Puerto Rico jurisdiction. The second and the third parts are

---

[8] See footnote No.1

two checklists meant to be used in conjuncture with the first part, though they can also be used apart from it. They synthesize the course in a way that the user can be sure to cover all aspects taught when doing the job of evaluating and drafting a bill of law. They are tools to put in practice what has been learned in the course prepared by Berio, based on her wide legislative experience and formal education in the matter, a product of revisions, research and verification that took various years. See transcript of hearing date 4/5/16 at pages 15 to 36.  One is named "Checklist Questionnaire for the Initial Research Stage in the Elaboration of a Draft Bill", and the second is named "Checklist Guidelines for the Preparation and proofreading of a Draft Bill or the Revision of an Amendatory Bill of Law". The copyright infringement in this case was of these two parts of the copyrighted work. (Plaintiff's Exh. 3A "Cert. translation of Sections: Questionnaire, etc. and Guidelines and Checklist, etc. of the Legislative Technique Course)

Since Berio holds a copyright of the work in question, that means that the burden of proof shifted to Flores-García to prove Berio's copyright invalid. Flores-García  was unable to show that Berio held an invalid copyright. In his questioning of the copyrightability of the work he "skipped a step" in not supporting his allegations by citations to evidence in the case. As the Court stated in _United Fabrics Int'l, Inc. v. C&J Wear, Inc._, 630 F3d 1255 (9th Cir. 2011), the court cannot do defendant's duty of pinpointing exactly how his allegations purporting that Berio's copyright is not valid are somewhere to be found in the evidence of this case.  The Court in United Fabrics stated:

Macy's argues that United failed to establish the chain of title to the underlying artwork and therefore does not have a valid copyright. But Macy's skips a step; nowhere does it set forth facts that rebut the presumption of validity to which United's copyright is entitled, and Macy's does not even argue that it has rebutted that presumption. The district court's ruling suffers from the same defect. Although such evidence may be present in the lengthy and extensive record, it is not our place to find it, see Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir.1988), or to provide an argument on behalf of Macy's as to how that evidence rebuts the presumption of validity, see _Renderos v. Ryan, 469 F.3d 788, 800 (9th Cir.2006),_ citing _Acosta-_

_Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir.1992)_; Fed. R.App. P. 28(b). Id. _United Fabrics_ at _1257._

      At trial, Flores-García did not present any evidence whatsoever contradicting the validity of Berio's copyright. In his _"Motion to Dismiss for Failure to State a Claim Under 17 U.S.C. §102 (Subject Matter of Copyright) (Docket 155)_ Flores-García intertwines copyright validity arguments with affirmative defenses. He only presented as evidence a copy of Berio's copyrighted work  and a copy of Senate Resolution No. 27 dated 2009 (Exhibits A, B and C of said Motion), thrown in there for the Court to digest for he makes no attempt to match his arguments with the documents included in his Motion. At no point in that Motion does he attempt to identify what part of Berio's work he deems unoriginal or not copyrightable, only statements divorced of the proper identification for the Court to devise where they are at, or how are they unoriginal. See <u>Society of Holy Transfiguration v. Gregory</u>, 689 F.3d 29, 51-52- Court of Appeals, 1st Circuit 2012, where the Court when faced with a similar vacuous argument form the Defendant, deemed it waived:

      _"The Archbishop attempts to guide us in the appropriate textual incisions he asserts are warranted. Specifically, he argues the district court erred in its comparison of the Works to the Archbishop's versions; instead of comparing the respective texts as a whole, the court should have performed the requisite triage pursuant to which it would have discovered that the only elements unique to the Works are, at most, "short phrases, single words, and expressions that are obvious." Because copyright protection cannot extend to such elements, the Archbishop claims it likewise cannot extend to the Works._

      _We are not convinced that the district court's application of the ordinary observer test here was inappropriate or that a deeper dissection analysis was warranted. An examination of each of the district court's orders shows that it considered the respective works as a whole while also narrowing in on their particular textual variations (where present),[17] ultimately concluding that "the slight textual differences between the two [texts] are insufficient as a matter of law to render the Archbishop's versions not `substantially similar' to the infringed portions of the Works copyrighted by the Monastery." Holy Transfiguration Monastery II, 754 F.Supp.2d at 227; see <u>Holy Transfiguration Monastery I, 685 F.Supp.2d at 226</u> (noting the "minuscule differences" between the respective parties' versions of the St. Isaac texts "are insufficient as a matter of law to render the website copy ... not `substantially similar' to the version copyrighted in the St. Isaac Work")._

*Moreover, while both this court and the Copyright Office have generally recognized that short phrases may not be subject to copyrightability, see 37 C.F.R. § 202.1(a) (listing as "works not subject to 52*52 copyright" "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; [and] mere listing of ingredients or contents"); see also* <u>CMM Cable, 97 F.3d at 1519,</u> *applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed uncopyrightable, see* <u>CMM Cable, 97 F.3d at 1520 n. 20</u> *(acknowledging that "not all short, simple, declarative sentences fall within the meaning of [37] C.F.R. § 201.1(a)");* <u>Syrus v. Bennett, 455 Fed.Appx. 806, 809 (10th Cir. 2011)</u> *("[A] short phrase may command copyright protection if it exhibits sufficient creativity.") (quoting 1 Nimmer § 2.01[B], at 2-17). As so often is the case, context matters.*[181]

*Here, we have no context to analyze. Aside from brief-yet-undeveloped citations to relevant case law, the Archbishop fails to identify — whether below or on appeal — the alleged short phrases which he contends are not copyrightable. Judges are not mindreaders. To properly assess whether the alleged short phrases are subject to protection, we must know what they are. We have often admonished counsel that "it is not the job of this court to do [appellant's] work for him."* <u>United States v. Rodriguez, 675 F.3d 48, 59 (1st Cir. 2012);</u> <u>United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990).</u> *In contrast to the cases to which appellant cites, which specifically reference the contested short phrases and thoroughly explain why those are or are not subject to copyright protection, the Archbishop has left us to sift through the parties' respective translations and weed out the alleged short phrases that he contends represent the only original (yet not copyrightable) portions of the Works.*

*Left alone with a plethora of ancient religious texts and phrases, we cannot properly know those phrases the Archbishop wants us to touch versus those we should not. And we need not so decipher on our own. We thus deem the Archbishop's dissection argument as to the copyrightability of the Works waived.* <u>Rodriguez, 675 F.3d at 59;</u> <u>Zannino, 895 F.2d at 17".</u>

On page 2 of said Motion, Flores-García alleges that the material "*lacks complete originality, creativity, and is not a means of expression*", or as stated on page 5 of his Motion, that it "*is essentially a blank form used to prepare for research in the composition of a draft bill".* He begins his argument by stating that Berio's copyright "form part of one complete work". See Docket 155 at page 4. He then states that *"..**most of the plaintiff's work may indeed be copyright material**, however, the material that plaintiff alleges was copied is not copyright material."* Docket 155 at page 5. Then he goes on to allege that those two parts of the copyright (the Checklists) cannot be the subject of copyright because they are not original, but instead "*a*

*series of questions that a person should consider when drafting a bill*", that "*a person who would want to teach a course in legislative draft preparation will have to certainly use and answer those **exact** questions,"* that Plaintiff in the Checklist Guidelines (Exhibit. B) utilizes the same logical order set out in the Senate of Puerto Rico Regulation (Exhibit C) of which he asks the Court to take judicial notice and that "**it would result in a tragic situation where no educational work could be done on teaching Legislative Law**."  Emphasis applied. See Docket 155 at page 8 and Exhibits B and C that accompany such Motion of Defendant. Flores-García at least does admit on Page 11 of his Motion that "*if defendant had copied plaintiff's original description or expressions of the Questionnaire and the Guidelines Checklist at exhibit A and exhibit B, then in that case plaintiff's expression would indeed be copyright infringement material*". Well, that is exactly what he did.  See Table of Similarities – Statement of Fact No. 28.

Even considering the text of Senate Resolution No. 27 on Exhibit C of Flores-García's Motion, that document doesn't even begin to shift the burden of proof of a valid copyright to Berio. Flores-García leaves all the work to the Court to find out how it is that such document, next to Berio's work, proves as he states on page 2 of said Motion, that the material "*lacks complete originality, creativity, and is not a means of expression*", or as stated on page 5 of his Motion, that it "*is essentially a blank form used to prepare for research in the composition of a draft bill.*" Both statements are insufficient to shift the burden of proof of lack of a valid copyright to Berio.  If anything, a bird-eye's view of her works and Resolution No. 27 in the manner that Flores-García wants us to see it, and also in a much closer view that we have evidenced in the Statement of Facts, distinctively show that in the Checklist Questionnaire for the Initial Research Stage (Docket 155, Exh. A, pages 1-12), there are blank lines that follow a

question that Berio, and only Berio, originally created, obviously as a teaching strategy to allow the person using the checklist to write the answer. The matter of how to go about the initial research one should do before drafting legislation is certainly very subjective. In her Checklist Berio is drawing on what worked for her as a lawyer drafting legislation, that is, her original expression of the idea of drafting a law.   The subjects of legislation are extremely varied. From all that can be done in terms of research of those subjects, she made up those questions as guidance to get the job done. Flores-García could have made the same exercise drawing from his experience, and the end result would have been different. Her way of approaching the varied subjects of possible legislation, conveyed in a way that is her original expression, is a subject of copyright. See Enterprise Mgmt. LTD., Inc. v. Warrick, 717 Fed 1112 (10th Cir. 2013), where a diagram, using not complete questions like in Berio's case, but single words was found to be copyrightable and that defendant had infringed such diagram. See diagram as showed in Robert. C. Osterg & Eric C. Osterberg, *Substantial Similarity in Copyright Law*, Apps.A-58-59, Practicing Law Institute, NYC, 2015. (Appendix No. F).

The Questionnaire, viewed from any standpoint is <u>not</u> a blank form, just as study pamphlets used as tools for completing any job are not blank forms in the manner of a notebook. The blank lines do not render the text written uncopyrightable, nor is Berio claiming copyright of blank lines or checkmark boxes. In the case of the Checklist Questionnaire she claims Flores-García's infringement is of those questions that she created independently and that he copied in his Power Point Presentation from slide 16 to slide 44 (See page 16 to page 44 of the PPP (Plaintiff's Exh. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc.)  . Flores-García expects the Court to wear blinkers and channel the sight only on those blank lines instead of seeing quite clearly that of the **28** questions that comprise Berio's

Questionnaire, he copied identically **24**, and the other 4 questions have a stark similarity to Berio's original work (but were mutilated). To top it off, the questions in Flores-García's Power Point appear in the same sequence as Berio's Questionnaire. See Flores-García's Power Point Presentation slides 16 to 44 (Plaintiff's Exh No. 5-A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc.) and compare it to Berio's Checklist Questionaire, (Plaintiff's Exh. 3A, page 1 through 12 "Cert. translation of Sections Questionnarie, etc. and Guidelines and Checklist, etc. of the Legislative Technique Course").

In the other part of Berio's work, the Checklist Guidelines (Plaintiff's Exh. 3A "Cert. translation of Sections Questionnarie, etc. and Guidelines and Checklist, etc. of the Legislative Technique Course"), there are no blank lines, so as this part of the copyright is concerned the argument of the blank lines is all the more frivolous. These are not the blank account books of Baker v. Selden, 101 U.S. 99 (1880), nor the names and phone numbers of Feist, supra, that were not considered the subject of copyright. In the Baker case the Supreme Court rules than even when in that case no copyright subject matter was found, in the case of the teachings of science and the useful arts embodied and taught in a literary composition or book their essence consists in their statement and that is what is secured by copyright. Berio's work is a comment on a law subject, not a textbook on science or a useful art, but even in those cases the Court holds that they can be the subject of copyright.

> On the other hand, the teachings of science and the rules and methods of useful art have their final end in application and use; and this application and use are what the public derive from the publication of a book which teaches them. But as embodied and taught in a literary composition or book, their essence consists only in their statement. This alone is what is secured by the copyright. The use by another of the same methods of statement, whether in words or illustrations, in a book published for teaching the art, would undoubtedly be an infringement of the copyright. Baker, id. at 104.

Flores-García  did not copy the ruled blank lines, he took all of the original questions created by Berio and placed them in slides in the power point presentation, without the ruled lines. It is not the ruled lines, or the specific artwork she used that Berio claims infringement for, but for the questions she devised and he copied. Tinkering with the facts cannot amount to a proper rebuttal of the presumed validity of a registered work.

Berio's work is not a compilation of legal statutes relating to legislation. Both the Questionnaire and the Guide are interpreting and applying not only the very few statutes in Puerto Rican Law that deal with legislation crafting, but also the customary way in which crafting of the law is done in Puerto Rico as she has seen it, structure, matters of style, vocabulary, syntax and order, matters on how to find the best vehicle for the purpose the legislator wants to achieve; sources outside of legislation to be considered, like Supreme Court Decisions, Opinions of the Secretary of Justice; prior proposed bills, an inquiry of the persons that would be affected, matters related to the economic impact, studies that might have been conducted on the subject, matters of language and style, Philosophy of Law, etc. She draws from her own experiences and her studies in the matter to teach a person that which, according to her view, should be taken into account when drafting legislation. The themes are interdisciplinary, the pertinent statutes and rules are only part of what legislative technique entails. She asks the pertinent questions in her own original expression and chooses a specific approach to all that wealth of information. The one she thought best suited the subject of legislative technique in Puerto Rico. Another person might have given more importance to some other aspects of the theme, but her copyrighted work displays her own original expression on the matter, her choice of what is essential, what is helpful, how it should be done, with her own choice of words, expressions and structure.

For all the reasons stated above, it must be concluded that Berio holds a valid copyright, and that she registered her copyright before presenting the complaint. Flores-García did not show evidence to shift the burden of proof to Berio. Even then, Berio proved all elements required.

We shall discuss the defenses of merger and *"scènes à faire"* raised by Flores-García when we discuss defenses to infringement further along.

Flores-García rests his argument in that the kind of work she did cannot be copyrighted because it allegedly has no originality and amounts to a kitchen recipe, because it draws from the Constitution, Laws and the Rules of the Houses, that are not copyrightable. Such blatantly unfounded allegation relating to study guides has been discarded by the First Circuit in <u>Situation Management Systems v. ASP Consulting LLC</u>, 560 F.3d 53  (1st Cir. 2009) Beyond frivolous, such interpretation of the Copyright Law is outdated and not in consonance with the present view of study guides. Being faced with a similar argument, the First Circuit Court reasoned:

> *Here, the district court improperly denied copyright protection to large portions of SMS's works because it, in an error of law, found "they focus on concepts and teach a noncopyrightable process."Situation Mgmt., 535 F. Supp.2d at 240; see also id. at 241 (finding that "the structure or essence of SMS's works is not copyrightable" because, unlike a work of fiction that has a plot and characters, they merely discuss processes and ideas). The fact that SMS's works describe processes or systems does not make their expression noncopyrightable. See <u>Feist, 499 U.S. at 350-51, 111 S.Ct. 1282</u> (holding that a factual compilation may be entitled to copyright protection if it features an original selection or arrangement of facts even though the underlying facts themselves are noncopyrightable).* SMS's creative choices in describing those processes and systems, including the works' overall arrangement and structure, are subject to copyright protection. *See id.* (recognizing that the original selection and arrangement of noncopyrightable elements is entitled to copyright protection). The district court's analysis did what we cautioned against in <u>*CMM Cable,*</u> 97 F.3d at 1515: it lost sight of the expressiveness of the <u>62*62</u> works as a whole by focusing too closely on their noncopyrightable elements. *Id.* <u>Situation Management Systems at 61-62.</u>

Flores-García also contends that he could use the protected work because it didn't have a copyright notice when Berio used it for the course she gave at the Congress he attended in 2008. Notice of copyright is no longer needed or required, as explained In <u>Society of Holy</u>

Transfiguration v. Gregory, 689 F.3d 29- Court of Appeals, 1st Circuit 2012. There the Court stated that such notice of copyright is no longer a requisite. The lack of notice did not take her copyright into the public domain and thus, Flores was not entitled to use her work without Berio's permission. The Court in Holy Transfiguration, at 44 held:

> *For the most part, the Copyright Act of 1976 abolished the common law of copyright, but even under the 1976 Act, general publication without notice could cause a work to enter the public domain if the copyright owner failed to register the work within five years of the date of first publication. Brown, 498 F.3d at 23; see also Charles Garnier, Paris v. Andin Int'l, Inc., 36 F.3d 1214, 1224 (1st Cir.1994). The Berne Convention Implementation Act of 1988 transformed this legal landscape, and notice is no longer mandatory for works published after that Act's March 1, 1989 effective date. See Pub.L. No. 100-568, sec. 7, § 401(a), 102 Stat. 2583, 2857 (codified at 17 U.S.C. § 401(a)); Garnier, 36 F.3d at 1219.*

Berio's work was published after March 1, 1989 so this other argument of Flores also falls on its face.

## 2. Actual Copying-

Infringers of copyright will very rarely, if ever,  admit of doing so, that is why actual copying as a factual matter is generally established by showing that the defendant had access to the copyrighted work and that the offending and the copyrighted material are substantially similar. Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606 (1st Cir. 1988) (quoting Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 614 (7th Cir.).

### a)      Flores-García  had wide and clear access to Berio's copyrighted work:

That Flores-García had access and was given a copy of Berio's protected work is a well established fact, as was evidenced in the Statements of Facts and the documents. See Statements of facts 17-18.  In synthesis, he attended the 2008  Congress on Legislative Technique ad Quality of the Law, in fact titled extremely similar to his own power point presentation, "International Congress of Legislative Technique, "Legislative Technique and the Quality of the Law"[9].  The

---

[9] See footnote No. 2.

offending material, Flores-García's power point presentation (PPP), was presented by him to people attending a conference he gave at least twice in 2011 at the Senate of Puerto Rico. Flores offending material is titled "Drafting, Legislative Technique and Quality of the Law" (Plaintiff's Exh. 5A "Cert. translation of Power Point presentation of Drafting Legislative Technique, etc.").

By April of the year 2008, Flores-García worked as an advisor at the House of Representatives of Puerto Rico directly for the Speaker. The Congress was held from the 16th to the 18th of June, 2008.  Berio was an organizer of the event and also gave a conference using her protected works. The Congress counted for up to ten (10) credits of Continuing Legal Education. Materials used by the speakers of the Congress in their conferences were distributed to participants in a booklet form. The evidence shows that Flores attended the conference Berio offered in which she discussed and distributed both Checklists, the Guideline  and the Questionnaire, that are the core of this case. Besides Berio's testimony, Attorney Rosa Noemí Bell Bayron, testified and corroborated Flores-García attendance at Berio's Conference. The House of Representatives' Attendance List for the Congress shows he indeed attended the conference also. Attorney Rosa Noemí Bell-Bayron, testified that she was co- organizing that Congress with Plaintiff and that she knew who Flores-García was. She also testified that she saw the attendance list and that his name was in it the day that Berio gave her conference using the infringed works. See Transcript of trial at 4/6/16 – pages 56 line 22 to page 58 –line 25..See the attendance list and the Congress materials, that include Berio's work[10].  Flores-García at trial tried to dodge the question about his attendance claiming he could not remember and that he would go in an out of the conferences.

The existence of common errors in the works compared is the most probative evidence that can be. In his PPP Flores-García  even copied an error in Berio's work, where evidences that

---

[10] See footnotes No. 2 and 3.

Berio's mistake was reproduced by Flores-García  in his PPP. (Refer to Statement of Facts No. 24 and the Table of Similarities in Statement of Facts No. 28) What is the likelihood that Flores-García and Berio independently make the same error at the same sentence in such a strikingly similar text? Impossible, or next to impossible. See *Callaghan v. Myers*, 128 U.S. 617, 662 (1988) were the U. S. Supreme Court expressed: "*It may be added, that one of the most significant evidences of infringement exists frequently in the defendants' volumes, namely, the copying of errors made by Mr. Freeman.*"

This kind of evidence has been termed "probative similarity". See Osterberg, Id, at 1-6 where this concept is explained:

"*For example, one of the more persuasive ways to prove that a defendant copied a computer program is to show that defendant's code includes portions of plaintiff's code that are erroneous, inefficient, superfluous, or wrong.*" This is used normally used to establish access and/or similarities.

An additional corroboration of Flores-García's access to Berio's work at the Congress comes from the fact that Berio's was not the only work he copied from that Congress. He also copied from the keynote speech ("Conferencia Magistral") given by former Supreme Court of Puerto Rico Judge Rafael Alonso Alonso.  Refer to the booklet "I International Congress on Legislative Technique", pages 6 and 7 of the former Supreme Court Judge Alonso Alonso's keynote speech, and compare to it to Flores-García P.P.P. at page 15. He also copied from legislative technique scholar Bruce Feustel, another one of the speakers at that Congress. See page 15 of the PPP and compare to Feustel "The Importance and Development of Drafting", pages 1 to 6 of his presentation in the "I International Congress on Legislative Technique and the Quality of the Law" booklet, just after former Supreme Court Judge Alonso Alonso's keynote

speech.  Notice that, just like the case of Berio, no attribution of authorship was given to former Suprem Court Judge Alonso Alonso or Feustel[11].  Please also refer to Plaintiff's Exh. 5A ("Cert. translation of Power Point Presentation of Drafting Legislative Technique, etc.").

*The plaintiff may satisfy his first-step burden by either direct or circumstantial evidence. Id. Plagiarists rarely work in the open and direct proof of actual copying is seldom available. To fill that void, the plaintiff may satisfy his obligation indirectly by adducing evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying.* Johnson v. Gordon, 409 F3d 12, 18  (1st Cir. 2005)

Berio presented more than enough evidence that Flores-García enjoyed access to her protected work, so the requisite of adducing evidence that Flores-García had access to such work has been fully met.

**b) There is substantial similarity between Berio's copyrighted work and Flores-García's accused work, the PPP.**

Now that it has been already shown that Berio holds a valid copyright, and there was copying on the part of Flores-García, the First Circuit Court would enter in an analysis to determine: "whether the copying "actionable copying" was extensive enough to make the works "substantially similar", "using the ordinary observer test". Robert. C. Osterberg & Eric C. Osterberg, *Substantial Similarity in Copyright Law*, 3-10, Practicing Law Institute, NYC, 2015. Citations omitted. In the ordinary observer test the Court asks "*whether the accused work is so similar to the plaintiff work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. The First Circuit generally does not permit expert testimony in connection with the ordinary observer test.*" Osterberg, Id, at page 3-11. Citations omitted.

---

[11]See footnote No. 2.

A defendant "*need not copy the entirety of the plaintiff's copyrighted work to infringe, and he need not copy verbatim. Something less will do. What is required is that the defendant take enough of the original elements of plaintiff's that the two are substantially similar*". Robert. C. Osterberg & Eric C. Osterberg, Id, at 1-2, Practicing Law Institute, NYC, 2015. See Appendix F. Berio's copyrighted work has been butchered by Flores-García's appropriation of two whole and integral parts of her work, the Questionnaire and the Guideline. As such, Flores copied material of substance and value.

In the Statement of Facts No. 22 to 28 we previously showed the stark similarity between Flores-García's Power Point Presentation and Berio's Copyrighted work. The similarities between them preclude any possibility of independent creation by Flores. He even copied an error that appeared in Berio's work. See Statement of Facts No. 24. In fact, Flores-García's arguments in his defense do not include a negation that the two works are so similar. As we have seen he argues that they had to be written the same because there was no other way to write it, that unidentified employees at his office were the ones that did and that he played no part in it, even when his name was in the front and the back of the P.P.P., and that he sent a document to the Continuing Education Office (C.L.E.) of the Supreme Court stating his biography and with almost exactly the same material that Berio wrote and in the same order.

"The First Circuit cautions that the *sine qua non* of the ordinary observer test is the overall similarities rather than the minute differences between the two works: slight variations between works will not preclude a finding of infringement." Osterberg, Id, at 3-11. In this case, The similarities between Berio's copyrighted work and Flores-García's PPP are so stark, that his defense strategy rests mainly in denying at all cost that he prepared it. He aims at distancing himself from the PPP he presented twice publicly as if it was the plague. Osterberg adds that

when the Court finds there has being copying of both, protectable and unprotectable elements the Court filters out the unprotectable elements and only considers in its analysis the protected elements. Id. at 3-11.

As we said before in our discussion, in this case, Flores-García pointed at the blank lines in Berio's work to allege that hers was not protected material. Those lines were not even considered for the infringement, though they are part of the way she conveyed her teaching technique, but it is not part of the copying because Flores-García, instead of using that format, placed Berio's original expression in a power point presentation. But, as Osterberg, id at page 14-1 explains, "*[o]ne does not escape copyright infringement by copying a work into another medium or format.* "*Infringement can occur even though the copyrighted work is done in a a different medium than the challenged work.*" Appendix  F. Citations omitted. Also, this action did not transform the work in any way except placing Berio's work in slides and taking away the questions marks, which mutilated those questions, as they appear as statements instead of an inquiry that the drafter is to pose when preparing legislation.

The preponderance of the evidence is overwhelmingly in favor of Berio's claim that Flores-García copied her copyrighted work.

## B) The defenses to infringement raised by Flores-García do not apply in this case.

### 1)      The defenses of Merger and "scènes à faire"-

Contrary to what Flores-García argues, there is no single way to write about the subject of legislative technique. We just have to look at the same Congress were Flores-García was present as a participant  to see that all the presentations are different, including, Berio's, yet all speakers were teaching about the same theme, legislative technique[12]. See the article titled "*Capitol Drafting: Legislative Drafting Manuals in the Classroom*", written by Amy Lagenfeld,

---

[12] See footnote No. 2.

Clinical Professor of Law at Sandra Day O'Connor College of Law, Arizona State University in Temple, Arizona. Amy Langenfield, Capitol Drafting Professor of Law: *Legislative Drafting Manuals in the Classroom*", 22 Perspectives: Teaching Legal Res. & Writing 141 (2014), (Appendix G) where she compares this same kind of work as it has been done by the different state legislatures. At page 145, of said Article, Lagenfeld states:

> "*Legislative drafting manuals vary widely in their coverage of topics and range of teaching techniques. Hawaii's manual is a roughly 70-page collection of rules; Colorado's manual is a more than 600-page collection of lessons, samples, and legal memoranda. Thus the ideal way to use legislative drafting manuals in the classroom is to rely on more than one.*" Id. at 145.

Perhaps Flores-García cannot think of any other way of writing about legislative technique that is not the way Berio went about it, but that only shows the non-existent original research that went into his PPP. Even in the case of translations the Federal Courts have recognized them as copyrightable, because, just as drafting legislation, *the art of translation involves choices among many possible means of expressing ideas, and in that sense the merger argument is inapposite to the context presented here.* Merkos L'Inyonei Chinuch v. Otsar Sifrei Lubavitch, 312 F. 3d 94, 97 (2nd Cir. 2002).

And it also stated:

The fact that the Mangel translation is designed to serve a practical aim does not render it ineligible for copyright protection. *See Hart v. Dan Chase Taxidermy Supply Co.,* 86 F.3d 320, 321-22 (2d Cir. 1996) (fish mannequins are copyrightable because "many objects are both useful and works of artistic craftsmanship. Even useful articles ... can gain copyright protection for any physically or conceptually separable artistic features.") (internal quotations omitted). Thus, we agree with the District Court that the translation is copyrightable. *See Toksvig v. Bruce Publishing Co.,* 181 F.2d 664, 666 (7th Cir.1950) (copyright infringement occurred when a biographer of Hans Christian Anderson who was unfamiliar with Danish copied "original translations made by plaintiff [the author of an earlier work on Anderson] from Danish sources"). it involves choices among many possibilities.

The bottom line in regard to the merger defense according to Osterberg, id, at 2-10 is how many ways the idea can be expressed: *[t]he question really is: how many ways can the idea be*

*expressed? The fewer options available, the more likely that merger will preclude any finding of substantial similarity based on any similarities attributable to expressing the idea.*

Since the art of drafting laws is such a mix of language skills intertwined with matters of law that can also be interpreted, there is so much choosing to do by the author that it has prompted for example the European Union to establish one established way to do it. There are states, as we have seen, that have devised mechanisms to prepare a manual. In the case of Puerto Rico, there is no such manual established by law for legislative crafting, the raw materials are certain parts of the Constitution, scarce statutes and Legislature Resolutions that are open to interpretation. They say nothing about the myriads of subjects a person drafting legislation should do, or how to go about it, what uses of language are best to write, etc. And see that even in the case of places that have devised a certain guide in particular, those guides are not static, and they can be changed at any time because we are not talking here of one of Plato's Immutable Truths, they are open to whatever other better idea arise as to how to do it, and people are free to have their say about them. The theme is nowhere as constricted as translations, that are considered copyrightable, and the idea or subject can be done in many ways, most especially in Puerto Rico, where no official manual has been approved.

The defense of *"scènes à faire"* requires the defendant to prove that elements in the work are too commonplace to constitute protectable material. In here Flores-García did not identify such elements in the work, but just alleged that it was the case of Berio's work, because it all came from the Constitution, statutes, etc. Being a defense, like in the case of merger, Flores-García has the burden of proof to demonstrate it, which he did not.  If Berio's expression is so commonplace, why didn't he mention at least some of the books or manuals where the elements of her work appeared? Just saying that they stem from the Constitution, statutes and Legislative

Resolutions should not be enough, lest no book on Constitutional Law, Contracts, and the sort, could ever have a copyright. The 9th Circuit explained in <u>Ets-Hokin v. Skyy Spirits, Inc</u>., 225 F. 3d 1068, 1082 - Court of Appeals, 9th Circuit 2000 this defense in this matter:

> *Under the related doctrine of scenes a faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea;[17] like merger, the rationale is that there should be no monopoly on the underlying unprotectable idea. See <u>Landsberg v. Scrabble Crossword Game Players, Inc., 736 F.2d 485, 489 (9th Cir.1984); See v. Durang, 711 F.2d 141, 143 (9th Cir.1983) (per curiam)</u>. Although there is some disagreement among courts as to whether these two doctrines figure into the issue of copyrightability or are more properly defenses to infringement, see <u>Mason v. Montgomery Data, Inc., 967 F.2d 135, 138 n. 5 (5th Cir.1992)</u> (noting a split as to the doctrine of merger); 4 NIMMER § 13.03[B][3], at 13-69-13-70 & nn.164, 165 (same); id. at § 13.03[B][4], at 13-73 n.182 (noting a split as to the doctrine of scenes a faire ), we hold that they are defenses to infringement. Accord <u>Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir.1991)</u> (holding that the merger doctrine relates to infringement, not copyrightability); <u>Reed-Union Corp. v. Turtle Wax, Inc., 77 F.3d 909, 914 (7th Cir.1996)</u> (explaining why the doctrine of scenes a faire is separate from the validity of a copyright); see also 4 NIMMER §§ 13.03[B][3], at 13-69-13-70, 13.03[B][4], at 13-73.*

Since we find it is very pertinent to this discussion we will cite *in extenso* from <u>Enterprise Mgmt. LTD</u>, supra, at 1117-1118, where similar defenses were raised to portray the analysis the Court made in resolving the issues:

> *"Warrick argues Lippitt's diagram is not eligible for copyright protection because it consists only of unprotectable ideas or expression so intertwined with the underlying ideas as to lose their protection under the merger doctrine. In Warrick's view, Lippitt's diagram expresses a "fundamental" idea about organizational change and development. (Answer Br. 25.) It is, he says, a "statement about objective reality, not a work of fiction or the imagination." (Id.)*

> *Warrick misses the point. Although Lippitt's diagram may express an idea, Warrick could express the same ideas in his own fashion. He might have organized the components in a pie-chart-style format to show how each is a component of a larger whole. He could have approached the concept in a two-column format, listing each defect in the left column and the missing component in the right column. He could have simply described the concepts in prose, as he did in his motion for summary judgment. He could have used his own words to describe the components. He might have broken down or combined the components in a different way. He could have expressed the absence of one of the components with an "X" over the component, as did another writer's sample diagram; one Lippitt attached as Exhibit 10 to her response to Warrick's summary judgment motion. (Appellant's App'x 247–52.)*

> *The freedom Warrick enjoyed to express the ideas depicted in Lippitt's diagram in an alternative way is what distinguishes this case from the cases Warrick cites in defense of the*

*summary judgment. For instance, in Ho v. Taflove, the model at issue was "a new mathematical model of how electrons behave under certain circumstances." 648 F.3d 489, 497 (7th Cir.2011) (quotations omitted). It was intended to mirror, as realistically as possible, a natural physical phenomenon. Id. at 498. Thus, the form of the model was dictated by technical concerns rather than expressive choices. See id.*

*This case is more like Arica Institute, Inc. v. Palmer, 970 F.2d 1067 (2d Cir.1992). There, the court concluded the idea inherent in a diagram about "ego fixations" was not merged with its expression because there were "any number of ways" to construct the diagram. Id. at 1076. The diagrams at issue were constructed in the form of nine-pointed stars ("enneagrams"), with labels at the points, within a circle. Id. at 1070–71. The court imagined several alternative ways of expressing the same idea without the nine-pointed star, such as a numbered listing with interconnecting arrows. Id. at 1076.*

*In short, because there are many ways to express the ideas depicted in Lippitt's diagram, the expression does not "merge" with the underlying ideas".*

In sum, Flores-García did not meet the burden of proof in relation to the defenses of merger and *"scènes à faire"*.

### 2) Fair Use Defense-

Flores-García also seeks to avoid a determination of infringement of Berio's protected work with the defense of fair use.

The Copyright Act codifies the fair use doctrine and breaks it into four factors that a court must weigh in assessing whether use of a work is fair or infringing. See 17 U.S.C. § 107 (listing the purpose and character of a work's use the nature of the copied work, the extent of the copying, and its effect on a work's market value). When performing such weighing, a court should carefully balance the relevant interests and apply "an equitable rule of reason," as "each case raising the question must be decided on its own facts." H.R.Rep. No. 1476, at 65 (1976), reprinted in, 1976 U.S.C.C.A.N. 5659, 5679; see also Sony, 464 U.S. at 448-49, 104 S.Ct. 774. Society of Holy Transfiguration v. Gregory, 689 F.3d 29, 59- (1st Cir. 2012).

### a. Purpose and character of use-

In this prong Flores-García alleges that he "*sought no monetary or personal gain from the Power Point Presentation. To the contrary, he merely sought to educate and inform, so as to improve the legislative output of the Senate.*"

The First Circuit in <u>Society of Holy Transfiguration</u>, Id, at 59-60, requires a lot more analysis in this first factor, it requires for the Court to determine "whether and to what extend the new work is transformative:

The first factor we must consider is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Our task under the first prong is to assess "whether and to what extent the new work is `transformative,'" <u>60*60</u> that is, "whether the new work merely supersedes the objects of the original creation" or whether it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." <u>Campbell,</u> 510 U.S. at 579, 114 S.Ct. 1164 (internal citations and quotation marks omitted); *see also* <u>Folsom v. Marsh,</u> <u>9 F.Cas. 342, 345 (No. 4,901) (C.C.D.Mass. 1841) (Story, J.)</u> (stating for a work to be transformative "[t]here must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value of the original work").

In this case, the PPP and the C.L.E. document, "merely supersedes the object of the original creation". Flores-García's P.P.P. simply copies most of it *ad verbatim*, or near *verbatim*, very large amounts of text from Berio and puts it in slides. Flores-García doesn't touch on the subject of transformation at all. We must suppose he accepts that there is nothing transformative in the PPP and the C.L.E. document, it reflects minimal intellectual labor and judgment, and the works holds the same purpose and benefit as Berio's work, that is, to give a course on legislative technique. This finding, according to the First Circuit "seriously weakens a claimed fair use":

Regarding the "transformative" or "productive" nature of the Archbishop's versions, the Archbishop is correct that "transformative **use** is not absolutely necessary for a finding of fair use." <u>Campbell,</u> 510 U.S. at 579, 114 S.Ct. 1164. However, copyright's goal of "promot[ing] science and the arts, is generally furthered by the creation of transformative works," and the law is clear that the lesser the transformative nature of the work, the greater the significance of those factors that may weigh against a finding of fair use. *Id.*

The Archbishop's translations are not transformative. A review of his works reflects minimal "intellectual labor and judgment." <u>Folsom,</u> 9 F.Cas. at 345. The versions are essentially verbatim or near-verbatim copies of the Works, with only minuscule alterations of "expression, meaning, or message." <u>Campbell,</u> 510 U.S. at 579, 114 S.Ct. 1164. Moreover, the Archbishop's translations hold the same purpose and benefit as the original Works, *i.e.,* to further religious practice and education. They thus "merely supersede[] the object[] of the original" Works. *Id.;* *see also* <u>Worldwide Church of God v. Phila. Church of God, Inc.,</u> 227 F.3d 1110, 1117 (9th Cir.2000); *cf.* <u>Núñez v. Caribbean Int'l News Corp.,</u> 235 F.3d 18, 23 (1st Cir.2000) (holding that

combining photographs with editorial commentary created a new use for the works). Courts have admonished that where a copy's "use is for the same intrinsic purpose [as the copyright holder's] ... such use seriously weakens a claimed fair use;" we find the same debilitating effect on the Archbishop's claim to be true here. _Weissmann,_ 868 F.2d at 1324; _see also_ _Am. Geophys. Union v. Texaco, Inc.,_ 60 F.3d 913, 923 (2d Cir.1995) (stating "[t]o the extent that the 61*61 secondary [work] involves merely an untransformed duplication, the value generated by the secondary [work] is little or nothing more than the value that inheres in the original.... [T]hereby providing limited justification for a finding of fair use"). _Society of Holy Transfiguration_, Id, at 60-61

As to the claim of the use being educational and not for profit the First Circuit Court analysis again is not agreeable to Flores-García's view. That it was free for the employees and an educational activity does not remove liability for using Berio's work, because it generated financial income for himself, as he was a contractor and must have been paid for his conference, using Berio's work, and he also gained recognition and beefed up his resume. The employees, in turn, did not have to pay one of the seminars that Berio was giving at the time either. Flores-García obtained a free ticket for the Senate not having to pay Berio to give the course, which might have gained him recognition also. He became a substitute for Berio, using her work. Flores-García  testified to giving courses in other places, about being a professor of Law and later becoming an Appellate Court Judge in Puerto Rico. Giving these seminars at the Senate surely improved his professional and economic prospects. He was, in fact, appointed as a Judge directly from his work as a contractor for the Senate. Also, education seminars in a place not intended for education, we propose should not have the same protection as a place dedicated to that endeavor. The Senate of Puerto Rico is not an institution of higher education, or a school. If the Court is going to widen the scope to include every professional seminar, one could expect a lot of very unfair use of specialized materials.  Furthermore, the seminars Flores-Grcía gave using Berio's work were job requirements for the attendees.

In _Society of Holy Transfiguration_, Id, at 61, the Court held:

*The Archbishop contends the first factor still favors a finding of fair use because any copying he did was not for commercial gain. But removing money from the equation does not, under copyright law, remove liability for transgressing another's works. The Supreme Court has held that "the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement." Campbell, 510 U.S. at 584, 114 S.Ct. 1164; see also Sony, 464 U.S. at 450, 104 S.Ct. 774 ("Even copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have."). In effect, the commercial-noncommercial distinction the law draws centers not on whether a user intends to line his own pockets, but rather on "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, 471 U.S. at 562, 105 S.Ct. 2218. "Profit," in this context, is thus not limited simply to dollars and coins; instead, it encompasses other non-monetary calculable benefits or advantages. See Worldwide Church, 227 F.3d at 1117; Weissmann, 868 F.2d at 1324 ("The absence of a dollars and cents profit does not inevitably lead to a finding of fair use.") see also Webster's II New Riverside University Dictionary 939 (1984) (defining the term "profit" as an "advantageous gain or return").*

*Applying this framework, we agree with the Monastery that the Archbishop "profited" from his use of the Works. Regardless of whether the Archbishop's versions generated actual financial income for himself or the Dormition Skete, he benefitted by being able to provide, free of cost,[22] the core text of the Works to members of the Orthodox faith, and by standing to gain at least some recognition within the Orthodox religious community for providing electronic access to identical or almost-identical English translations of these ancient Greek texts. For these reasons, we conclude that as to the first factor, the scales tip in the Monastery's favor.*

### b. Nature of the copyrighted work-

In this factor the Court analizes whether the copyrighted work is factual or creative and whether it had been previously published.  Berio's works are more of a creative nature than factual, as drafting laws is very much of a craft, it involves a lot of creativity and choices of words and structure, it is not a manual on how to fix a refrigerator. In the matter of previous publishing, the work had been published, but the First Circuit in *Holy Transfiguration*, Id, at 61, expressed that factor does not tip the fair use balance in favor of the defendant:

However, the Monastery's remaining Works were published, reducing — to some extent — concerns as to the Archbishop's unilateral publication of versions of them. But that does not tip the fair use balance in favor of the Archbishop, even with respect to the previously published Works. *See generally Fitzgerald v. CBS Broad., Inc.,* 491 F.Supp.2d 177, 187 (D.Mass.2007) (fact that photographs had been published before CBS's use of them "does not mean that this inquiry weighs in favor of fair use, only that [the] photographs do not fall into the category of private works to which the doctrine of fair use is especially unsuited"). We proceed to the second inquiry.

We believe the Works here fall closer to the creative end of the copyright spectrum than the informational or factual end. *See Worldwide Church,* 227 F.3d at 1118. The Works reflected creativity, imagination, and originality in their language, structure, word choice, and overall textual translation. *See* 17 U.S.C. §§ 101, 102 (establishing Copyright Act's protection for translations of preexisting works); *Feist,* 499 U.S. at 345-46, 111 S.Ct. 1282 (noting low bar for establishing creativity of a copyrightable work); *Merkos,* 312 F.3d at 97 (holding English translation of Hebrew prayerbook as sufficiently original to be copyrightable). We conclude that the scales lean away from the Archbishop's contention of fair use as to this second factor.

### c. Amount and substantiality of the use.

For this factor Flores-García's argument resorts to circular reasoning so as to dodge how extensive the copying of Berio's protected work has been: *"In the instant case if a portion of Plaintiff's work was used, it was not done in a way as to make it incompatible with the fair use defense."* Flores-García has the burden of proof to convince this court that the amount copied from Berio was not substantial and the best he can come up with is to say something like "the sky is blue because it is blue" and what sounds like "please be flexible in here". The reason being that the copying in this case has been showed to be extremely extensive, and verbatim, or almost verbatim; it was used with the same intrinsic purpose and place where Berio had given her course, as to to replace her, the two parts copied from her work are core to her course on legislative technique because it is where the student applies what has been learned, no attribution for her work was mentioned in the PPP and he posted it on the internet in the Senate's website, to make it available for the whole world, bearing not Berio's name , but his.

Even if the Court were to find that even when Flores-García had control of the P.P.P.,  he didn't order it to be posted, it is clear that he recklessly set in motion all events so that it Berio's work was displayed there. The internet display for at least a year or more, would not have happened but for Flores-García's actions or complete recklessness in dealing with the source of the PPP He testified as to looking in the internet very late in the night, every night looking for commentaries about matters going on in the Senate, but somehow he NEVER looked into the

Senate's internet page to see his PPP there at the "Programa de Educación Legislativa Contínua" (Continuing Legislative Education Program) site of said webpage.  One would have to be yoga master flexible to find this factor going in favor of Flores-García. But that kind of extreme flexibility is not what the doctrine in the First Circuit is all about, it has nothing to do with foregoing the extension of the copying, it is not an Ay bendito! (poor me) kind of attitude, but a way to apprehend the amount and substance of the copying in the context of the work, like the Court explained in *Holy Transfiguration*, Id, at 62-63, that is reproduced here *in extenso* because the analysis is so pertinent to our case.

   *The third factor requires us to consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3); see <u>Campbell, 510 U.S. at 586-87, 114 S.Ct. 1164</u>. Our inquiry here is pliable and not affixed by cold calculations of the percentage of a work used versus unused. See <u>Harper & Row, 471 U.S. at 565-67, 105 S.Ct. 2218</u> (emphasizing significance rather than quantity of material copied); <u>Núñez, 235 F.3d at 24</u>. However, even though "`wholesale copying does not preclude fair use per se,' copying an entire work `[generally will] militate[] against a finding of fair use.'" <u>Worldwide Church, 227 F.3d at 1118</u> (quoting <u>Hustler Magazine Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1155 (9th Cir.1986)</u>); see also <u>Rogers, 960 F.2d at 311</u> ("It is not fair use when more of the original is copied than necessary.").*

   *The Archbishop attempts to narrow our focus to the fact that the copying he did of the St. Isaac work (specifically, Homily 46) is only "one of seventy-seven homilies in the St. Isaac work," which is only "3 pages in a work that in [sic] 568 pages or approximately a half percent of the entire work," and that his use as to the remaining Works only consisted of postings of small portions of the texts. Our focus, however, is not so limited. See <u>Núñez, 235 F.3d at 24</u> (noting inquiry as to amount and substantiality of a work's use "must be a flexible one, rather than a simple determination of the percentage used"); see also <u>Campbell, 510 U.S. at 586-89, 114 S.Ct. 1164</u> (treating a single song from an album as a whole work for purposes of fair use analysis); <u>Hustler Magazine, 796 F.2d at 1154-55</u> (deeming 300-word parody a complete work even though part of 154-page magazine; stating <u>63*63</u> "[a] creative work does not deserve less copyright protection just because it is part of a composite work").*

   *Lifting our eyes to the full extent of the Archbishop's use, we see that he made identical or near-verbatim copies of the Works — themselves parts of greater texts, but which alone may be qualitatively significant. See <u>Harper & Row, 471 U.S. at 564-66, 105 S.Ct. 2218</u> (use of quotations constituting 300 words of President Ford's entire memoirs amounted to copying of "the heart of the book" that weighed against fair use); <u>Roy Exp. Co. Establishment of Vaduz, Liechtenstein, Black Inc., A.G. v. Columbia Broad. Sys., Inc., 503 F.Supp. 1137, 1145 (S.D.N.Y.1980)</u> (use of approximately one to two minutes from hour-plus long films*

*"quantitatively" and "qualitatively" substantial). Thus, the Archbishop's pleas for us to acknowledge how much of the Works he did not copy are unavailing. See Harper & Row, 471 U.S. at 565, 105 S.Ct. 2218 ("`[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" (quoting Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir.1936))).*

*Courts have cut both ways as to the fair use of verbatim copying . Compare Sony, 464 U.S. at 449-50, 104 S.Ct. 774 (holding identical copying of videotapes under unique circumstances of case "[did] not have its ordinary effect of militating against a finding of fair use"); Núñez, 235 F.3d at 24 (finding newspaper's complete copying of a photograph to be "of little consequence" because "to copy any less... would have made the picture useless to the story"); with Harper & Row, 471 U.S. at 565, 105 S.Ct. 2218 ("[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression."); Worldwide Church, 227 F.3d at 1118-19 (rejecting argument that verbatim copying of religious text was reasonable simply because use was religious in nature); Wihtol v. Crow, 309 F.2d 777, 780 (8th Cir. 1962) (where defendant inserted identical copy of plaintiff's original piano and solo voice composition into his choir arrangement, court held "[w]hatever may be the breadth of the doctrine of `fair use,' it is not conceivable to us that the copying of all, or substantially all, of a copyrighted song can be held to be a `fair use' merely because the infringer had no intent to infringe").*

*A telling factor in conducting this analysis is "the purpose and character of the use," as "[c]opying does not become excessive ... merely because the portion taken was the original's heart." Campbell, 510 U.S. at 586-88, 114 S.Ct. 1164; see also Castle Rock Entm't, Inc. v. Carol Publ'g, 150 F.3d 132, 144 (2d Cir.1998) (noting importance of considering context to determine whether is "consistent with or more than necessary to further `the purpose and character of the use'" (quoting Campbell, 510 U.S. at 586-87, 114 S.Ct. 1164)). Here, the Archbishop's copying is for the same purpose for which the Monastery uses its Works — for religious education and devotional practice. Because the Archbishop's use here was "for the same intrinsic purpose for which [the Monastery] intended it to be used," this third factor weighs against his contention of fair use. Marcus v. Rowley, 695 F.2d 1171, 1175 (9th Cir.1983); see also Worldwide Church, 227 F.3d at 1118 (holding fact that plaintiff-infringer used verbatim copy of religious text for same purpose as defendant-owner weighed against finding of fair use as to third factor).*

### d. Effect on the market-

The fourth and final factor addresses "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Considered "the single most important element of fair use," *Harper & Row v. Nation Enterprises,* 471 U.S. 539, 566 (1985) this factor

requires us to consider both (1) the degree of market harm caused by the alleged infringer's actions, and (2) "whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market for the original. *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 590 (1994) (internal quotation marks and citation omitted). *Holy Transfiguration*,  Id, at 64.

For this factor, Flores-García' argument is: "*with regards to the fourth factor: defendant Flores -García only utilized the allegedly infringing power point twice, in a lecture comprised exclusively of employees and contractors of the Senate. Flores did not disseminate the power point presentation outside of the power point presentation outside of the two lectures, he did not sell the presentation, and he did not charge for its presentation or distribution.*"

Flores-García is trying to minimize the effect of the potential market his infringement has caused for Berio's work. Again, this is a defense for which Flores carries the burden of proof. Flores does not take into account that because of the nature of her work the Legislature of Puerto Rico is the obvious principal market for her work, moreover when, as we have explained, the Senate of Puerto Rico, nor the House of Representatives have prepared a guide like hers. This is not Harry Potter's newest book, it is a very specialized work for which the Legislature of Puerto Rico comes to be the prime buyer, not only for the book in itself but the conferences and seminars Berio was to offer, that now are in the realm of someone else that can use her work, cloaked and enveloped in Flores-García's name.  The impact of the infringement is huge in terms of the devaluation of what is her well earned specialty, the legislative technique. It also deprives her and has stopped her from making further derivatives of her work and giving conferences on the subject. Puerto Rico is a very small place and the Legislature even smaller and the possibility that Berio's work has traveled to every office in the Puerto Rico Legislature and through the

internet to everywhere is extremely real. Like we said before, Flores-García is the proximate cause that made Berio's work appear in the Senate's page for so long. And to boot the PPP was only taken down from the site after Berio's lawyers demanded it. Pertinent enough is the fact that it was not taken down until Flores-García requested it, even though he was not then working at the Senate. To that extent the work is considered his creature. Flores-García, as the proponent of this fair use defense has not met his burden to prove the injury to the possible economic and non-economic reward was minimal to Berio. She testified as to the havoc this infringement caused for her in economical, professional and personal ways. It has caused her to stop or greatly diminish her professional endeavors in Puerto Rico and Internationally. If not stopped, the adverse impact for this and future works is real and happening. Flores-García's  PPP acts as a substitute for Berio's original in the same market and as such the detrimental impact is undeniable. Flores did not provide any evidence either of how his P.P.P. was going to affect Berio's copyrighted material derivatives, and as such did not meet his burden in proving his affirmative defense. Again Society of Holy Transfiguration, supra, at 64-65.

> *If we were to rule that the Archbishop's use here was fair, this unquestionably would affect the market for translations of ancient religious texts, likely discouraging other institutions from investing in and expending the time, effort, and resources necessary for producing works that, without modern translations, would remain predominantly inaccessible to other religious institutions and their members. See Núñez, 235 F.3d at 24 (quoting Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 110 (2d Cir.1998)) (internal quotation marks omitted) (acknowledging that the fourth factor is "concerned with secondary uses [of works] that, by offering a substitute for the original, usurp a market that properly belongs to the copyright holder"); see also Weissmann, 868 F.2d at 1326 (finding copying of scientific works not fair use where such a determination "would tend to disrupt the market for works of scientific research without conferring a commensurate public benefit"). To say that use of the Works along the lines of what the Archbishop did here would not affect the value of the Works would be to drastically undercut the import of such texts and their corresponding translations within the religious community at large.*
>
> *As to our second inquiry, it is without question that if others were to engage in the "unrestricted and widespread" copying of the Monastery's Works, this would have an "adverse impact on the potential market for the original" Works. Campbell, 510 U.S. at 590, 114 S.Ct.*

_1164_ (internal _65*65_ quotation mark and citation omitted). If anyone could freely access the Works, electronically or otherwise, the Monastery would have no market in which to try and publish, disseminate, or sell its translations. The Archbishop himself seemed aware of this danger, conceding that his Website provided explicit instructions so that users could access, download, and print copies of the Works, effectively negating any potential market in the Works. See _Harper & Row, 471 U.S. at 568, 105 S.Ct. 2218_ ("[T]o negate fair use one need only show that if the challenged use `should become widespread, it would adversely affect the potential market for the copyrighted work.'" (quoting Sony, 464 U.S. at 451, 104 S.Ct. 774) (emphasis added)). Thus, the Monastery's translations of ancient texts (which the Archbishop does not contest were expensive to create) would have been toiled over, with no possible market in which to reap the fruits of its labor.

In sum, the record shows that the Archbishop offered identical or near-identical versions of the creative Works on his Website for the precise purpose for which the Monastery had created the Works in the first place, thereby harming their potential market value. See _Worldwide Church, 227 F.3d at 1120_ (assessing market factor and noting as relevant "[t]he fact ... that [appellee] has unfairly appropriated [the work] in its entirety for the very purposes for which [appellant] created [it]"). Having carefully balanced the scales, we conclude that the Archbishop's defense of fair use fails in full.

Berio proved beyond doubt the adverse effect of Flores-García's infringement in the market value of her work.

### 3) Legislative and Eleventh Amendment Immunity Defense-

Flores-García also raised among his defenses that he was shielded by Eleventh Amendment Immunity and by Legislative Immunity. In synthesis, Flores-García rests on the argument that when he gave the PPP he was doing a legislative act and was thus covered by those defenses. Both defenses were raised in two motions he presented (see Docket Nos. 30 and 53). This Honorable Court denied those motions in an Order dated July 29, 201 (Docket No. 76). In the subject of Sovereign Immunity, the Court ruled that since Flores was being sued in his personal capacity, he was not entitled to Eleventh Amendment Immunity:

"Suits brought against a state official in his official capacity another way of pleading represent an action against an entity of which the officer is an agent. They are considered filed against the State itself. _Will_ v. _Mich. Dep't of State Polic,_ 491 U.S. 58, 71 (1989). In those cases, the Eleventh Amendment stands as a bar to state law claims against state officials for monetary

*relief, as that relief would be enforced on the state's treasury. See, Guillemard-Ginorio, 585 F.3d at 531 (explaining rule).*

*By contrast, personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. Flores-Galarza, 484 F.3d at 26; Guillemard-Ginorio, 585 F.3d at 531. They are not considered suits against the state for purposes of Eleventh Amendment immunity, for relief would come from the officer's own pocket. See, Flores-Galarza, 484 F.3d at 26 (applying rule). This is so even if the state agrees to cover the officer to spare him from the loss, and regardless of whether the claims alleged against the individual officer are grounded in state or federal law. Id.; Guillemard-Ginorio, 585 F.3d at 531. Given that Flores-García was sued in his personal capacity, he is not entitled to Eleventh Amendment immunity."*

Nothing new in terms of the elements of this defense was brought at trial, or after this Court Order of July 29, 2015 (Docket No. 76) by Flores-García in his testimony, or by his attorneys. The causes of action in this case are still against Flores-García in his personal capacity, so there should be no doubt that the denial of that Defense by the Court still stands, and that Flores abandoned the Eleventh Amendment Immunity Defense. In case Flores-García erroneously raises this moot issue in his brief, we will discuss our stand on the issue.

Plaintiff has the right to sue Flores-García as averred in the Second Amended Complaint (Docket No. 49) pursuant to the long standing doctrine of Ex Parte Young, 28 S. Ct. 441, 209 U.S. 123 (1908), allowing injunctive relief actions directed even to state officials (Flores is been sued in his personal capacity). As fairly recently stated by the U.S. Supreme Court in VA. Office for Prot. and Advoc. v. Stewart, 131 S. Ct. 1632, 1638 (2011):

*"This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to "permit the federal courts to vindicate federal rights." Pennhurst, 465 U.S., at 105. It rests on the premise—less delicately called a "fiction," id., at 114, n. 25, 104 S.Ct. 900—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation, and does not apply "when `the state is the real, substantial party in interest,'" id., at 101, 104 S.Ct. 900 (quoting Ford Motor Co. v. Department of Treasury of Ind., 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)), as when the "`judgment sought would expend itself on the public treasury or domain, or interfere with public administration,'" 465 U.S., at 101, n. 11, 104 S.Ct. 900 (quoting Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963)."*

The Copyright Act expressly states that courts may grant injunctive relief on such terms as they may deem reasonable to prevent or restrain infringement of copyright. See 17 U.S.C. sec.502 (a), <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388,392 (2006), <u>Swarovski Aktiengesellschaft v. Building #9, Inc.</u>, 704 F3d 44 (2013) (First Circuit), <u>CoxCom, Inc. v. Chaffe</u>, 536 F 3d 101 (2008) (First Circuit), <u>Universal City Studios Productions LLLP v.Bigwood,</u> 441 F. Supp. 2d 185-Dist. Court, D. Maine (2006), <u>Elektra Entertainment Group Inc. v. Carter</u>, 618 F. Supp. 2d 89-Dist. Court, D. Maine (2009), <u>EMI Mills Music, Inc. v. Empress Hotel, Inc.</u>, 470 F. Supp. 2d 67-Dist. Court, D. Puerto Rico (2006).

Flores-García, is sued only in his personal capacity, so according to federal common law, sovereign immunity does not bar the suit:

"*It has been reiterated by the Supreme Court in cases subsequent to Pennhurst and has not been departed from by the various circuits, including our own. See, e.g., Alden, 527 U.S. at 757, 119 S.Ct. 2240 (explaining that where the plaintiffs' suit seeks money damages from the officer "in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself," sovereign immunity does not bar the suit "so long as the relief is sought not from the [sovereign's] treasury but from the officer personally"); Hafer, 502 U.S. at 29-31, 112 S.Ct. 358 (holding that the Eleventh Amendment does not prohibit suits to impose individual and personal liability on state officers under § 1983); Flores Galarza, 484 F.3d at 26 ("In short, in a suit against an officer for money damages when the relief would come from the officer's own pocket, there is no Eleventh Amendment bar . . ."); Ying Jing Gan v. City of New York, <u>996 F.2d 522</u>, 529 (2d Cir.1993) (holding that defendant official sued in individual capacity "may not assert immunity under the Eleventh Amendment")*". <u>Guillemard-Guinorio v. Contreras-Gómez</u>, 585 F.3d 508, 531 (1st Cir. 2009).

Besides, inasmuch the Eleventh Amendment Immunity is predicated for Puerto Rico under the false premise that, like the states or the American tribes, it had sovereignty before it became an unincorporated territory of the United States, that theory was dispelled and proven wrong with the advent of <u>Commonwealth of Puerto Rico v. Sánchez Valle</u>, 579 U.S. ___ at page 14 (2016), decided June 9, 2016. This startling shift in the trajectory of the Supreme Court

regarding the sovereignty of Puerto Rico before it became a possession of the United States, deserves a renewed look at the Eleventh Amendment Immunity Defense that the Federal Courts have been applying to Puerto Rico. The Supreme Court of the United States in <u>Commonwealth of Puerto Rico v. Sánchez</u>  supra, at 14 stated:

"On this settled approach, Puerto Rico cannot benefit from our dual-sovereignty doctrine. For starters, no one argues that when the United States gained possession of Puerto Rico, its people possessed independent prosecutorial power, in the way that the States or tribes did upon becoming part of this country. Puerto Rico was until then a colony "under Spanish sovereignty." Treaty of Paris, 15 Art. 2, 30 Stat. 1755. And local prosecutors in the ensuing decades, as petitioner itself acknowledges, exercised only such power as was "delegated by Congress" through federal statutes".

Congress intended expressly to abrogate the Eleventh Amendment of the Constitution, "*or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity,*" as stated in 17 U.S.C. § 511 concerning the U.S. Copyright Act:

## § 511. Liability of States, instrumentalities of States, and State officials for infringement of copyright.

(a) In General. — Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by <u>sections 106</u> through <u>122,</u> for importing copies of phonorecords in violation of <u>section 602,</u> or for any other violation under this title.

(b) Remedies. — In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under <u>section 503,</u> actual damages and profits and statutory damages under <u>section 504,</u> costs and attorney's fees under section 505, and the remedies provided in <u>section 510.</u>

Congress included Puerto Rico in the application of The U.S. Copyright Act through the definition contained in 17 U.S. Code § 101. It follows then that since Puerto Rico had no sovereignty apart from the United States when it first became a possession, there was no give and take of sovereignty as was the case of the states and the Indian tribes. The argument for applying the Eleventh Amendment Defense in Puerto Rico rests on a case that compares the case of Hawaii to Puerto Rico in 1913. At least on paper, Hawaii was considered a sovereign independent state, then became a territory before it became a state. But things are being seen in a different angle now. It is like the world was flat before some people kept on traveling west on the Atlantic and discovered it was not so. One cannot cling to a time when it was flat. In the year 2000 the court dismissed a similar argument stating that "*there is a rather large fly in the ointment*", because the Supreme Court had recognized its common law sovereignty immunity almost immediately thereafter in <u>*Porto Rico v. Rosaly Y Castillo*</u>, 227 U.S. 270, 273 (1913). See <u>Jusino Mercado v. Commonwealth of Puerto Rico</u>, 214 F. 3d 34, 39 (1st Circuit 2000). Seems like the argument has to be revisited because now there might just be a flying dinosaur, a pterodactyl, spoiling the ointment for those rulings of another time, when the Commonwealth was seen as in the matter of a state of the union as immunity went.

The Territorial Clause gives Congress plenary power to do whatever it deems useful in respect to the territories (including the abrogation of their sovereign immunity). *See* U.S. Const. Art. IV, § 3, cl. 2 (investing Congress with the power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States"). So it follows that since Congress intended to abrogate the Eleventh Clause Immunity, or under any other sovereign immunity, the sovereign immunity of Puerto Rico, if any, was abrogated by the sovereign that holds the sole power, and from where all power emanates, the United States of America.

In the subject of Legislative Immunity, this Honorable Court, ruled that the acts were not legislative in nature and that, as a consequence, Flores-García was not entitled to legislative immunity.

> *Whether an act is legislative turns on the nature of the act itself, rather than on the motive or intent of the official performing it. For the same reason, "courts must ascertain if actions were legislative both 'in form,' i.e., 'integral steps in the legislative process,' and in substance, i.e., the acts 'bore all the hallmarks of traditional legislation."* González-Droz *v.* González-Colón, *717 F.Supp.2d 196, 214 (D.P.R. 2010) (citing* Bogan *v.* Scott-Harris, *523 U.S. 44; 55(1998)).*

Flores-García argues that his purported acts stem from legislative duties assigned to him and his Office or to the programs he directed, and accordingly, he should be afforded the protection of legislative immunity (Docket No. 53, Exh. 1 at pp. 2-3,7). But nothing in the pleadings suggests that the conduct at issue - preparation and use of a power point presentation and materials in connection with a seminar offered to officers, employees, consultants, and independent contractors of the Senate - was related to the implementation of "prospective, legislative-type rules that are general in nature" or to core legislative functions such as the ones legislative immunity seeks to protect. Acevedo-Garcia v. Vera Monroig, 204 F.3d 1 at 8 (1st Cir. 2000).

On this reading, the conduct was neither legislative in form, nor in substance; did not encompass integral steps in the legislative process; and lacked the hallmarks of traditional legislation. It did not involve drafting legislative bills or publishing legislation, taking part in a legislative committee, or gathering information on the performance of a government agency. At best, it was incidentally related to legislative activities. And that type of conduct is not accorded the shield of legislative immunity. See, Harwood, 69 F.3d 622 at 630 (1st Cir. 1995) ("If a legislator - or his surrogate - undertakes actions that are only casually or incidentally related to legislative affairs... no immunity inheres").

Flores-García points out that during the time of the events he worked as the Director of the Office of Legal Counsel and of the Continuing Legislative Education Program of the Senate, the inference purportedly being that his work must have been of a legislative nature (Docket No. 53, Exh. 1 at p. 12). The fact that a legislator or a legislative aide performs an act in his official capacity does not automatically confer protection. See, Harwood, 69 F.3d at 630 (so asserting). It is the nature of the particular act rather than the title of the officer which governs whether immunity attaches. Acevedo-Garcia, 204 F.3d at 8 (quoting Forrester v. White, 484 U.S. 219, 227 (1988)). As indicated earlier, the acts here were not legislative in nature. In consequence, Flores-García is not entitled to legislative immunity.  Docket No. 76.

At the trial, Flores then proceeded to infuse his arguments with a new twist not raised in his two previous Motions on the subject. Obviously, trying to paint a picture more amenable to the legislate immunity defense. His counsel said that: "after defendant's testimony, the gaps have been filled". See Transcript 4/7/16 at page 84 line 25 to page 85 lines 1-2.  This new version of history tells that when Flores was giving his lectures, he was really discussing specific pending legislation, as well as the drafting and status of particular bills and problems regarding legislative measures at the time. Asked by his own Counsel, Ms. Frau about what specific legislative measures were those, he could not really identify any, but spoke of all kinds of generalities dodging the question. See transcript, 4/5/16 Flores page 139, line 4 to page 142, line 15.

As evidence, he pointed to "Administrative Order 10" he offered in evidence (Defendant's Exh. B-1). This administrative Order established a continuing education "compulsory for any Advisor, Contractor, and Employee of the Puerto Rico Senate Commissions." It also stated that whoever did not comply would be subject to administrative penalties and their check would be withheld until they met the requirement:

"*Employees who fail to meet the annual Continuing Legislative Education requirement shall be subject to administrative penalties and their check shall be withheld until they meet the requirement.*"

Even if some would love to add to the Puerto Rico Constitution some kind of education requirements for legislators, besides knowing how to read and write, the education of legislators, minimal or otherwise, is not a legislative act, but something incidental, just like the minimum age required for being a senator or a representative is not a legislative act either.  Administrative Order 10, is exactly that, an *administrative* act, and giving a lecture pursuant to that Order does not change an educational act into a legislative act. A Law professor for example, is not doing a legislative act when giving a lecture about legislation at the University of Puerto Rico Law School. If you move that same lecture to the Senate it doesn't turn magically into a legislative act, no matter who is attending. Moreover, this is a job requirement for the employees, contractors and such, something like coming to work at the right hour or filling certain educational requirements to obtain a job. Their checks can even be withheld if they do not attend. Imagine someone withholding a Senator's check because he did not comply with some continuing education credits! That sure would not be a legislative type rule, or a prospective, legislative-type rule that is general in nature, it would be downright unconstitutional. There is no legislative act within a billion mile radius of a lecture about legislative technique, pursuant to Senate Administrative Order 10 or any like it.

Pertaining to the story told by Flores-García at trial about discussing actual legislative measures on what was supposed to be a continuing education course for credits to comply with Administrative Order 10, the defendant is contradicting himself in a manner that makes one's jaw drop to the floor. Just about 30 hours before the trial, on April 3, 2016, in his Motion to Dismiss for Failure to State a Claim Under 17 U.S.C. § 102 (Subject Matter of Copyright) and Fair Use

Flores-García argued that the lecture was educational in the "*nature of the non-profit educational use*" to gain a factor to his side into the defense of fair use. See Docket 155.  Then, just hours later, he testifies that the PPP was like a prop and was only projected in there (as if background music), but that the real purpose of that meeting at the Senate was to discuss specific pieces of legislation, something very confidential, that not all employees were invited because it was sooo confidential and specific to certain commissions that were not working fast enough the legislative measures they had in charge. So Flores just as easy builds the argument about the educational nature for the fair use defense around the same lectures than then purports to portray the very same lectures in very closed door meeting (we must deduce by the hush hush, of the majority party only) whose purpose was to discuss that they were not moving some legislative measures fast enough. How, if that was what they were really doing, was that count for continuing education pursuant to Administrative Order 10? What he describes is now not an educational seminar on legislative technique as he argued before, but a meeting to push the employees to work, again an administrative act, or a political strategy reunion for just the right people. But, why did they need the PPP as a backdrop for that? Those kinds of meetings usually take place at some Advisors Office, or at the specific Commission involved, not at group meetings because it precisely touches on some very sensitive issues, and no PPP on some legislative subject is needed or requested for that as a prop. Yet, according to Flores the PPP was especially concocted for those meetings and even given twice. Pertinent also is that the PPP does not have any slide about a piece of legislation in particular. It is also very telling that only some people could attend, the selected ones. When you single out specifiable individuals and affects then differently from others, the act is administrative.

Now, even with this multi-reality, multi-tasking bogus view of the same lectures given by Flores in which he said he had this box where he had the specific legislation that had to be worked on, but at same time the PPP was shown and given out in a booklet, and somehow the participants were supposed to get continuing education credit for attending; even believing the unbelievable, even then, showing the PPP is still not a legislative act. For example, a legislator could be reviewing a specific legislation in the making, sitting at his desk, but all of the sudden turns and grabs his new IPhone and calls to threaten his ex-wife. Reviewing the legislative measure is legislative in nature but abusing his ex-wife is not. We can separate one act from the other, even if it happens in the same room, almost at unison. So, even believing Flores self-serving new version of those lectures, copying, the whole time he posted the PPP or gave out copies, not giving Berio credit for her work, or asking permission, and the internet posting, make the Defense of Legislative Immunity not applicable to Flores.

*"The immunity defense in this case protects only conduct within the "sphere of legitimate legislative activity." Colon Berrios, 716 F.2d at 89 (citing Doe v. McMillan, 412 U.S. 306, 320, 93 S.Ct. 2018, 2028-29, 36 L.Ed.2d 912 (1973); Tenney, 341 U.S. at 376-77, 71 S.Ct. at 788-89). Absolute legislative immunity "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Negron-Gaztambide, 35 F.3d at 27 (quoting Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988)). "[I]t is the nature of the particular act rather than the title of the office which governs whether immunity attaches." Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 21 (1st Cir.1992); see also Agromayor, 738 F.2d at 59. "Acts ... that are administrative in nature do not 'give rise to absolute immunity from liability in damages under § 1983.' " Negron-Gaztambide, 35 F.3d at 28 (quoting Forrester, 484 U.S. at 229, 108 S.Ct. at 545); see also Agromayor, 738 F.2d at 59-60; Cutting v. Muzzey, 724 F.2d 259, 261-62 (1st Cir.1984)...For the Clause to apply, the activity must be " 'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.' " Agromayor, 738 F.2d at 59 (quoting Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1976)). It does not cover "actions that are only 'casually or incidentally related to legislative affairs,' " Harwood, 69 F.3d at 630 (quoting United States v. Brewster, 408 U.S. 501, 528, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972)), "or which fall outside the 'legitimate legislative sphere.' " Id. (quoting Eastland v. United States Servicemen's Fund, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). Romero Barceló, supra. )."* Romero-Barceló v. Hernández Agosto, 75 F.3d 23, 28-29 (1st. Circuit, 1996).

In <u>Bogan v. Scott Harris</u>, 523 U.S. 44, 55 (1998)  the Supreme Court ruled that in order to determine whether a defendant's acts are legislative, courts must ascertain if their actions were legislative both "in form,", meaning "integral steps in the legislative process," and in substance; that is,  if the acts "bore all the hallmarks of traditional legislation."  In this case, the acts are not one, nor the other. They are not legislative in form nor in substance. The form resembles much more a continuing education setting than the type of work that is actually done in a legislature enacting a statute, debating it on the Floor, or attending a public hearing. As to the substance, Plaintiff's works sure don't look like a legislative piece, do not relate to any particular legislative piece and its content are not to be imposed unto anyone. They are literary non-fiction works designed to educate in the art of law drafting. Offering seminars to legislators aides or to the public on legislation drafting might be useful, yet education of the staff and the public at large is not an integral part of the legislative process. The Legislative Assembly can, as it has, offer continuing education seminars, but it is not a part of its legislative duties under the Constitution or under the law, nor it is required to prepare a seminar or visual materials about law drafting, an optional occurrence without which legislatures can and have survived for centuries.

"Absolute immunity applies to "prospective, legislative-type rules" that are general in nature." <u>Alexander v. Holden, 66 F.3d 62, 67 (4th Cir.1995)</u>." <u>Acevedo García v. Vera Monroig</u>, 204 F3d 1, First Circuit (2000). See also <u>McSurely v. McClellan</u>, 553 F.2d 1277, 1285-1286 (D.C. Cir. 1976), 753 F.2d 88 (D.C. Cir. 1985) where the court stated that legislative immunity does not apply to the dissemination of unlawfully seized documents outside of a Subcommittee:

*"We discuss, first, the allegation of dissemination of some or all of the 234 documents to individuals or agencies outside of the Subcommittee. To the extent plaintiffs charge dissemination outside of the Halls of Congress, the federal defendants are not immune to further questioning.[25] "That Senators generally perform certain acts in their official capacity as*

*Senators does not necessarily make all such acts legislative in nature." Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). Even though Members of Congress or their aides frequently intercede on behalf of constituents with agencies of the Executive Branch[26] or disseminate to the public beyond "the legitimate legislative needs of Congress" documents introduced at committee hearings,[27] such conduct falls outside of legislative immunity. It does not meet the test set forth in Gravel, that activities other than literal speech or debate are entitled to the immunity of the Speech or Debate Clause only when they are "an integral part of the deliberative (or) communicative processes by which Members participate in committee and House proceedings" with respect to matters before the House. 408 U.S. at 625, 92 S.Ct. at 2627. Similarly, distribution or exhibition of the 234 photocopies outside of legislative channels is not legislative activity entitled to absolute immunity by force of the Speech or Debate Clause, in the absence of a claim of legislative purpose.[28] Such activity, if otherwise actionable under the applicable law a matter on which we express no opinion[29] may be subject of a private suit for damages."*

The Supreme Court of Puerto Rico has taken the same stance as federal courts, and draws from federal courts decisions as to an analysis based on whether the act itself is legislative in nature, which we have already discussed. See <u>Díaz Carrasquillo v. García Padilla</u>, 2014 TSPR 075, and cases thereby discussed, where the Supreme Court stated: *"...we can conclude that in order to apply the legislative immunity we have to consider the nature of the act in controversy, as it is only protected that directed to establish public policy and which is consonant with legislative processes. We cannot bestow the same protection to acts which are administrative in nature and that are directed to affect and individual in particular."* (our translation) We draw the same conclusion in this issue based on the arguments already discussed: that legislative immunity should not be granted as to the supplemental jurisdiction causes of actions involved in the case of Flores-García either. The fact that Flores-García is no longer working at the Legislature, leads to conclude that also the actions taken by him after his termination from the job and in the future, would not be covered by legislative immunity. That he conspicuously placed his name on the copied works strongly signals that he intended to appropriate the works for future private use. Furthermore, Flores-García blatantly violated federal law and impinged on a citizen's rights, Berio's. As such, he should not be granted immunity.

**C) Though infringement of copyright need not be intentional, Flores infringement was willful.**

Flores-Garcia claimed in his testimony that he had nothing to do with the preparation of the P.P.P. he presented as a minimum at two seminars he gave on the Year 2011 at the Senate of Puerto Rico where he worked as a private contractor. He claimed the staff in his office prepared the presentation, that had nothing to do with it, and that he only gave the conferences; that both times he saw the presentation at the time he was going to give the seminars. This was the same presentation, so for starters, there is discrepancy in his account of the truth.

Hard to believe also, is that Flores-García, as Head of that office didn't bother to read the PPP before giving the conference. That someone at his office also sent his resume accompanied with Berio's questions from her protected work to the Office of Continuing Education of the Supreme Court without him knowing is equally unbelievable. That document shows he was claiming authorship for the work for purposes of crediting for those courses he gave at the Senate in 2011. Berio and Flores-García  stipulated the similarities between Berios' work and those questions sent in his name to the Supreme Court of Puerto Rico Office of Continuing Education, and they are for the most part identical. See stipulation at Docket No. 165.

Flores-García further testified (hearing date 4/7/16, page 51 of trial transcript) that he had given other seminars apart from the ones he gave at the Senate and that on all those other seminars he had authored the presentations. That points to him also as the author of the PPP in question in this case and the person that actually copied from Berio. It would be hard to believe that these two times at the Senate he would place his name where the author of the document

usually places it (the first and last page) having not even read them before, distancing from his usual way of doing things.

Be it that the infringement happened unknowingly or with intent, Flores-García is liable anyhow under the Copyright Law. Intent is important when considering the amount of damages, but not to find liability for copyright infringement because innocent infringement is still infringement under 17 U.S.C. § 501. We firmly believe that there is nothing innocent about Flores-García's actions, but innocent infringement is no defense. If we are to believe Flores-García in that he never paid any attention as to how those presentations were concocted, that being a Law college professor he didn't know the copyright policies applicable to those universities he worked, nor the one applicable to the Senate where he was the Director of the Office of Legal Counsel; if we are to believe his testimony to that extent then we have to conclude that he is culpable of willful blindness. He is there to take the credit for the power point presentation to enlarge his resume and recognition but he cannot care less where the document was made and if it infringes somebody's copyright.

Again, there is nothing innocent about Flores-García's infringement. A person with such an impressive resume as he has shown, holding very important contracts as an advisor to the Legislature, Professor of Law at the University of Puerto Rico Law School, and holding a Master Degree in Law from Georgetown University, must have exercised at least a modicum of care not to infringe Berio's copyright by at least asking whoever prepared the P.P.P. what were the sources of such document. Instead he testified of never asking that question and that his job was just to give the conference. That as if he was some kind of parrot and notwithstanding the fact that the people in the audience, as he testified, were there to comply with continuing education credits. He further placed his name in the first page and the last page of the P.P.P., and his

resume and Berio's checklist somehow made it into the Continuing Education Office of the Puerto Rico Supreme Court (Plaintiff's Exh. 12A "Cert. translation of Supreme Court stamped "Drafting, Legislative Technique, etc.").

It is clear that Flores-García's infringement not only happened as a matter of fact, but it must also be regarded as willful because he recklessly disregarded the well known rules against infringement. As such, it should result in an increase of damages awarded to Berio than if the infringement was innocent, but either way there is infringement, whether Flores-García knew he was infringing or not. In Sony BMG Music Entertainment v. Tenenbaum, 660 F.3d 487- (1st Cir. 2011), the Court held:

> *Tenenbaum's argument rests on the false premise that knowledge is an element of non-willful copyright infringement under the Copyright Act. To the contrary, the Act contains no requirement that a particular violation of copyright be knowing to constitute a non-willful infringement.[21] See 17 U.S.C. § 501; see also Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir.1986) ("Under § 501(a) intent or knowledge is not an element of infringement.").*

> *We join our sister circuits who have unanimously and routinely found that an infringement is willful under § 504 if it is "knowing." See, e.g., Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 508\*508 267, 278 (6th Cir.2009) (rejecting challenge to jury instruction that, under § 504(c), "[a]n infringement is willful when a defendant engaged in acts that infringed a copyright and knew that those actions may infringe the copyright") (alteration in original); Zomba Enters., Inc. v. Panorama Records, Inc., 491 F.3d 574, 584 (6th Cir. 2007); Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 799-800 (4th Cir.2001). Cf. Yurman Design, Inc., 262 F.3d at 111 (finding plaintiff is "not required to show that the defendant had knowledge that its actions constitute[d] an infringement" for infringement to be willful under § 504(c)* **so long as defendant recklessly disregarded the risk of infringement** *(citation omitted) (internal quotation marks omitted).* Emphasis added.

**D. All elements of Puerto Rico Moral Author Rights Act infringement by Flores-García have been met by Berio.**

In the finding of facts and throughout this discussion, with its proper reference to documents and transcript of the trial it has been evidenced that Berio's work was mutilated by

Flores-García to the harm of said protected work. Because of their stark resemblance, any person observer might think that the mutilation is part of Berio's doing.

Puerto Rico Act No. 55 of March 9th, 2012 (31 PRLA 1401 ss) vacated Act. No. 96 (1988) for the first time offered legal protection to the author whose works had been altered, changed or mutilated without permission, in other words, whose "moral rights" had been violated. Act No. 55 broadened such protection in various aspects. Prior to Act. No. 96, the main protection available to Puerto Rican authors was afforded exclusively by the Federal "Copyright Act" which, however, did not cover moral rights and thereby exempted local legislation in that regard from the effects of preemption. (Appendix A)

Defendant Flores-García's unauthorized reproduction of portions of plaintiff's work and his insertion of these plagiarized portions in a different work prepared for the Senate of Puerto Rico not only created an illegal derivative work but, in effects, mutilated and altered plaintiff's original and duly registered work in violation of her moral rights of integrity and attribution which are protected in Article 2(b) of Act No. 55. Pancorbo v. Wometco, 115 DPR 495 (1984) (Appendix D)  For such transgression, Flores-García is liable to Berio for all the damages caused.  See also Rule 44.1 Rules of Civil Procedure, 32 LPRA Ap. V, in relation to the costs and attorney fees applicable to the Puerto Rico action.

**E)  Remedies**

Berio hereby elects actual damages for the infringement of her works pursuant to the U.S Copyright Act and the Puerto Rico Moral Author's Rights Act. Ms. Berio suffered various damages arising from the unauthorized use of her work by Flores-García in using it for Continuing Legal Education (C.L.E.) lectures and his posting of the P.P.P. in the Senate webpage.  She also suffered damages by the unauthorized use of her work in the C.L.E.

document.  Furthermore, Berio suffered damages of lack of attribution and in the mutilation and distortion of her work.  Berio's teaching activities at Interamerican University Law School was adversely affected due to defendant Flores-García misappropriation of her copyrighted works. Berio had to cease giving professional lectures due to defendant Flores-García misappropriation of her copyrighted works. The planned commercial publication of her book, encompassing the copyrighted material used in the P.P.P. and the C.L.E. document, had to aborted due to defendant Flores-García misappropriation of her copyrighted works. Berio lost her opportunity to attend the University of London on a Legislative Technique Fellowship.  This has a loss of opportunity cost value that the Court will determine at its discretion. Ms. Berio lost her opportunity to work and collaborate with "Microjuris Co." in the development and distribution of "on demand" courses and a "blog".  Berio has a right to actual damages.  Her estimate of lost book sales are 500 copies at $50- each. Her lost revenues gross are an estimated $25,000.00. Ms. Berio's physical and emotional health suffered as a result of the misappropriation of her lifelong work by defendant Flores-García but also due to the inherent stresses associated with the judicial process, which she would not have gone through is it were not for defendant's conduct. This amount in damages is for the Court to quantify.

For the remedy of a permanent injunction, the Supreme Court decision in eBAY v. MercExchange, 547 U.S. 388 (2006) is hereby followed. The Court in that case held:

*Because we conclude that neither court below correctly applied the traditional four-factor framework that governs the award of injunctive relief, we vacate the judgment of the Court of Appeals, so that the District Court may apply that framework in the first instance. In doing so, we take no position on whether permanent injunctive relief should or should not issue in this particular case, or indeed in any number of other disputes arising under the Patent Act. We hold only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards. Id, at 394.*

The first, that Berio has suffered an irreparable injury, is met by the fact that her work was distributed in mutilated form throughout the internet, without given her any attribution and confusing the public as to which is her work and which is Flores, who attributed the PPP to himself. She did not get to choose when and where to keep on publishing her work. Whatever amount of money the court concedes in this case will never amount to the damage that was done. The second prong follows from the first in this case because the right to exclude others from using her property is damaged to a point of no return because her work is enveloped in his PPP to the exponential, there is no way of contacting or identifying the people who might have downloaded it.  The balance of hardships tilts clearly on the side of Berio because for Flores to comply with it he just entails to do what a law abiding citizen should do anyhow, that is, not use the copyrighted material ever again in a way that infringes copyright; that is hardly a hardship. For her, the harrowing experience of seeing her work at the hands of somebody else that has all the resources to continue doing harm does constitute hardship. The public interest would not be affected since the right version, Berios', is available through her and she is just waiting for the Court to recognize the infringement to continue her scholarly work for the benefit of Puerto Rico. It is better for the public interest also, that the work of scholars in very intricate matters like legislative technique are afforded all the possible protection so that they continue doing it and it serves as a deterrent for other persons inclined to infringe their works.

## VI.   CONCLUSION

In synthesis, Berio has proved all elements of the actions averred in the Second Amended Complaint against Flores. Flores has failed to meet the burden in contradicting all aspects of these elements, nor did he meet the necessary burden in the defenses he raised to prove his

infringing was not actionable. As a matter of Law and Equity, Berio has a right to the remedies the U.S. Copyright Law and the Puerto Rico Author's Moral Rights Act of Puerto Rico endow a rightful copyright owner whose work has been infringed.

Plaintiff has a valid copyright over a work which defendant Flores-García willfully copied, used, distributed and in some cases, mutilated. All those are actions infringing plaintiff Monín Berio's copyright and her rights under the Puerto Rico Intellectual Property Law.

Berio is the author of the Questionnaire and the Guidelines. She wrote them herself using an original allocation of words and themes of her own selection, which constitute her written original expressions of the different aspects involved in the legislative technique. So, the Court has in front of it a valid copyright. The copying of that copyrighted material is patently obvious. The quantity of material copies as well as the more than substantial similarity in both the P.P.P. and the C.L.E. document is staggering. Defendant Flores-García limited himself to steadfastly deny that he was the person that prepared (i.e. cpied form Berio's work) the P.P.P. and the C.L.E. document. Too many factors point to Flores-García as the infringer of Berio's work. To review some:

1. Flores-García attended the 2008 Congress on Legislative Technique and the Quality of the Law.

2. Flores-García received, as all attendees did, a copy of the materials to be discussed therein which contains the materials that were copied in the P.P.P. and the C.L.E. document.

3. Flores-García was present when Berio gave her conference based on the materials distributed and later copied in the P.P.P. and the C.L.E. document.

4. The titles of both the P.P.P. and the C.L.E. document are strikingly similar to the name of the Congress:

Congress: The Legislative Technique and the Quality of the Law.

P.P.P:  Drafting, Legislative Technique and the Quality of the Law.

C.L.E. document"  Drafting, Legislative Technique and Quality of the Law.

5.    In both the P.P.P. and the C.L.E. document, the name of Flores-García appears as the author.   In the P.P.P. in the title page and the last page.   That also happens in the C.L.E. document, in the title page and in page 2 of 5 pages, featuring his long list of degrees and professional experiences and accomplishments.

6.    Flores-García formally requested from the Senate of Puerto Rico, by letter, that the P.P.P. be deleted from the Senate's webpage.

To all that evidence, Defendant Flores-García answers:

1.  I did not prepare the P.P.P. nor the C.L.E. document.

2.  I did not know how my credentials got into the C.L.E. document nor why was it filed at the Supreme Court.

3.  Both the P.P.P. and the C.L.E. document were prepared by the staff of the office which I directed, but I do not know who did it nor did I examine the P.P.P. prior to using it, minimum two times.

4.  I do not know what is the copyright policy at the Senate of Puerto Rico; the University of Puerto Rico Law Review (where he was an editor)  and the University of Puerto Rico Law School (where he is part of the faculty).

Given the above stated facts, it is plaintiff's conviction and respectfully submits to the Court, that it is beyond rational belief that Flores-García did copy Berio's work.  As long as the Court adheres to the obvious and logical natural consequences of facts presented by plaintiff, Flores-García's claim that he did not copy Berio's work cannot survive judicial inspection.  To believe

Flores-García's claim that he did not copy Berio's copyrighted work will run afoul of Judge Serrano Geyls' very wise admonition, over half a century ago, in People v. Luciano, 83 PRR 551 (1961) at 561:

"*We judges should not, after all, be so naïve as to believe statements which no one else would believe*".

WHEREFORE, plaintiff respectfully requests judgment against defendant Flores-García granting the aforementioned remedies and others that apply, at the discretion of the Honorable Court.

RESPECTFULLY SUBMITTED, this 30th day of June 2016.

CERTIFICATE OF SERVICE. The undersigned counsels hereby certify that the instant document has been filed with the Court's CM/ECF System, which will automatically serve notice on all counsel of record in the present case, to their respective registered E-mail addresses.

/s/ **Celso E. López**
USDC-PR 123201
P.O. Box 500
San Sebastián, P.R., 00685
Tel. 787- 363-2678
E-Mail: copeca@copecajetcenter.com

/s/ **Manuel Moraza Choisne**
USDC-PR 116508
Cond. Lemans Suite 605-607
Ave. Muñoz Rivera 602
Hato Rey, P.R., 00918
Tel. 787-758-2280
Fax 787-767-0354
E Mail: morazach@prtc.net

*/s/* **Carmen N. Muñoz Gándara**
USDC-PR 212811
Cond. Lemans Suite 605-607
Ave. Muñoz Rivera 602
Hato Rey, Puerto Rico, 00918
Tel. 787-758-2280
Fax 787-767-0354
E mail: morazachoisne@gmail.com