**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MONÍN BERIO-RAMOS,

    Plaintiff,

       v.

GERARDO FLORES-GARCÍA,

    Defendant.

CIVIL NO.  13-1879 (PAD)

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff Monín Berio-Ramos sued Gerardo Flores-García and the Senate of Puerto Rico seeking injunctive and monetary relief for alleged copyright violations under the U.S. Copyright Act of 1976, 17 U.S.C. § 101, et seq., and the Author's Moral Rights Act of Puerto Rico, P.R. Laws Ann. tit. 31 §§ 1401j-1401ff (Docket No. 49).  Flores denied liability (Docket No. 52).  The Senate of Puerto Rico is no longer a party, as the action against it was dismissed on Eleventh Amendment grounds (Docket No. 115).

Having seen and heard the witnesses during trial and examined all exhibits and evidence in light of applicable law, the court finds that Berio's work is protected, and was copied verbatim or near verbatim without her authorization into approximately two thirds of a PowerPoint prepared without Flores' input by personnel of the Senate Office that he directed.  Even though he used the PowerPoint in two lectures as part of the Senate's Continuing Legislative Education Program, there is no evidence that he copied Berio's protected work or had any role in the copying; that the slides he used during the lectures corresponded to Berio's protected work; that he uploaded or authorized the uploading of the PowerPoint into the Senate's website; or that he prepared,

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 2

submitted or authorized the submission of a document with infringing material to the Puerto Rico

Supreme Court for registration to qualify for professional continuing education credits in a way

that would make him directly liable here.  Given that Berio is not seeking to impose secondary

liability upon Flores, the case must be dismissed.

## I.    PROCEDURAL BACKGROUND

On November 27, 2013, Berio initiated this action (Docket No. 1).  On November 29, 2013,

she amended the complaint (Docket No. 2).  After several procedural incidents, on October 31,

2014, she filed a second amended complaint (Docket No. 49), which Flores and the Senate

answered (Docket Nos. 52; 70).  On December 26, 2014, Flores filed a motion for judgment on

the pleadings invoking Eleventh Amendment and legislative immunity (Docket No. 53), which the

court denied (Docket No. 76).  On January 5, 2016, the Senate filed a motion for judgment on the

pleadings (Docket No. 112), which the court granted on Eleventh Amendment grounds (Docket

No. 115).[1]  A bench trial followed on April 5, 6, and 7, 2016 (Docket Nos. 160-162).  After Berio

rested her case, Flores argued a Rule 52 motion, which was denied (Docket Nos. 161; 176, pp. 79-

94).  Flores presented his case, renewing the Rule 52 motion (Docket Nos. 172; 177, pp. 75-96).

The court reserved judgment to review the trial evidence and testimony, as well as the parties'

post-trial briefs.  Pursuant to Fed.R.Civ.P. 52, following are the court's findings of fact and

conclusions of law.

---

[1] The mere fact that an individual defendant's conduct is undertaken in the course of providing services to the state
does not relieve him of personal liability, even if the government cannot be sued for damages under the Eleventh
Amendment.  See, Lane v. First Nat. Bank of Boston, 871 F.2d 166, 174 (1st Cir. 1989)(noting that responsible
officials may be sued in their individual capacities for money damages under the Copyright Act); Anderson v. Brown,
852 F.2d 114, 122 (4th Cir. 1988)(articulating formulation in case of public employee sued in her individual capacity
for conduct taken in the performance of discretionary functions).

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 3

## II.    **FINDINGS OF FACT**

### A. **Berio**

Berio is a lawyer.  She works extensively in the field of legislative techniques, having completed studies in the field at the University of London, Tulane University, and the Italian School of Legislation and Legislative Technique.  See, Docket No. 175, pp. 15-22; Plaintiff's Trial Exhibits 1-A and 2.  Beginning in 2002, she has taught a course on legislative techniques at the Interamerican University Law School in Puerto Rico and is a lecturer in that field.  Id.  By 2008, she had developed and prepared a Course on Legislative Techniques (in Spanish, "Curso de Técnica Legislativa"), which includes: (1) a textual, explanatory portion; (2) a questionnaire; and (3) checklist guidelines for the preparation and drafting of legislation.  See, Docket No. 175, pp. 23, 27-28, 31-37; Docket No. 176, pp. 17-18, 26-28, 32-34; Plaintiff's Trial Exhibit 3-A.  The work was registered in the Puerto Rico Intellectual Property Registry on January 31, 2008, and with the U.S. Copyright Office on May 1, 2013.  See, Docket No. 175, pp. 24-26; Plaintiff's Trial Exhibits 4-A and 6.  The different parts of the work are complementary; however, the Questionnaire and Checklist Guidelines are the most important parts, and may be used independently.  See, Docket No. 176, pp. 17, 33-34.

From April 16 through 18, 2008, Berio and her colleague Rosa Noemí Bell-Bayron organized and hosted an International Congress on Legislative Technique and Quality of the Law, which was held in the Senate of Puerto Rico in the Capitol Building in San Juan, and was attended by approximately 220 persons.  See, Docket No. 175, pp. 23, 27-30; Docket No. 176, pp. 10, 54.  During the first day of the Congress, Berio distributed to the attendees –comprised of legislators, legislative aides, attorneys, and students– a booklet with the legislative technique course and the Questionnaire and Checklist Guidelines.  See, Docket No. 175, pp. 27-28, 30, 36; Docket No. 176,

p. 56.  She gave a lecture on the third day of the conference, explaining the purpose and use of these materials in drafting bills.  See, Docket Nos. 175, pp. 28, 36-37; 176, pp. 59-61.  Although the work did not include or display her name, Berio stated that she was the author.  See, Docket Nos. 175, p. 37; 176, pp. 10-11, 60-61.

## B.  **Flores**

Flores is an attorney.  In 2008, he worked as Deputy Director of the Office of Legislative Advisors to the Speaker of the House of Representatives of Puerto Rico (Docket No. 176, pp. 57; 101-104; 152).  From January 2009 to December 2012, he worked as a contractor, as Director of the Office of Advisors to the President of the Senate of Puerto Rico.  Id. at pp. 96, 109, 170.  (Docket No. 177, p. 50).

## C.  **Acts of Alleged Infringement**

First, on two occasions –April 8 and September 7, 2011– Flores gave lectures displaying some of the slides of a PowerPoint presentation titled "Drafting, Legislative Technique, and the Quality of the Law" (in Spanish, "Redacción, Técnica Legislativa y Calidad de la Ley") (the "PowerPoint").  See, Flores' Testimony, Docket No. 176, pp. 129-132, 142-143; Plaintiff's Trial Exhibit 5-A.[2]  These lectures were part of the Senate of Puerto Rico's Continuing Education Program for its employees, advisors, and contractors, as well as directors of legislative commissions.  See, Flores' Testimony, Docket No. 176, pp. 129-132, 142-143.  The PowerPoint includes significant portions of Berio's work.  Out of the 92-slides that comprise the PowerPoint, 62 slides incorporate almost entirely, word-for-word, Berio's Questionnaire and Checklist

---

[2] At trial, Flores did not clearly specify the dates on which he gave the lectures, albeit he stated that he did so on at least two occasions.  See, Docket No. 176, pp. 128, 132.  In his Factual Version of the Pretrial Conference Report, he expressed having used the PowerPoint Presentation in "two lectures offered to Senate employees and contractors on April 8, 2011 and September 7, 2011."  See, Docket No. 107, p. 6, ¶ 9.

Guidelines.  Moreover, the PowerPoint contains what Berio described as a grammatical error found in the original work.  See, Berio's Testimony, Docket No. 175, pp. 117-118; Docket No. 176, p. 61.  Berio did not authorize her work to be included within the PowerPoint or displayed in the lectures (Docket No. 175, p. 127).  The PowerPoint does not recognize Berio's authorship.  Berio's work is included as Appendix I and the PowerPoint as Appendix II.

Second, on October 7, 2011, the Puerto Rico Supreme Court's Office of Continuing Legal Education received from the Senate of Puerto Rico a document titled "Drafting, Legislative Technique and Quality of the Law," bearing Flores' name and official title, a brief biography of him, and the seal of the Senate, along with a list of around 42 statements and questions that are verbatim or near verbatim copies of Berio's Questionnaire, in a similar order as in the original work (the "CLE Document").  See, Plaintiff's Trial Exhibits 3-A and 12-A; Docket No. 176, pp. 165, 172-173.[3]  Berio did not authorize copying of her work into the CLE Document.  The document does not recognize Berio's authorship.  It is included as Appendix III.

Third, from at least February 2013 to September 2013, the PowerPoint was uploaded to and available for viewing and downloading without Berio's authorization through the Senate of Puerto Rico's website, until it was removed at Flores's behest after Berio sent him a demand letter. See, Docket No. 175, pp. 121-122, 128-129; Docket No. 176, pp. 61-62, 65, 70-71, 144-145. Nevertheless, it continued to appear in different sites as search engine results for the search term "legislative technique."  Id.

---

[3] The court ordered the parties to stipulate the similarities, identicalities, and variations between the works (Docket No. 176, pp. 187-189).  The parties prepared the stipulation, which was submitted at Docket No. 165.

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 6

# III.   DISCUSSION

## A. Federal Copyright Act

The owner of a valid copyright holds certain exclusive rights, including the right to perform or authorize reproduction of the work, to prepare derivatives of the work, to distribute copies to the public, and to publicly display the work.  See, Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 54 (1st Cir. 2012)(addressing topic).  These rights are separate, distinct, and severable from one another.  See, Columbia Pictures Industries, Inc. v. Redd Horne, Inc., 749 F.2d 154, 158 (3rd Cir. 1984)(so noting).  One infringes a copyright "when he or she violates one of [those] exclusive rights."  T-Peg, Inc. v. Vermont Timber Works, 459 F.3d 97, 108 (1st Cir. 2006).

### 1.  Copying

Berio claims Flores unlawfully copied her work (Docket No. 181, p. 1).  To establish copyright infringement, she must show by a preponderance of the evidence: (1) ownership of a valid copyright; and (2) copying by the alleged infringer of constituent elements of the work that are original.  See, Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361 (1991)(stating test); Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996)(similar).  To establish ownership, "a plaintiff must prove that the work as a whole is original, and that the plaintiff complied with applicable statutory formalities."  CMM Cable v. Ocean Coast Properties, 97 F.3d 1504, 1513 (1st Cir. 1996).

Originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  Feist Publications, Inc., 499 U.S. at 345.  The requisite level of creativity is extremely low; even a slight amount will suffice.  Id.  The vast majority of works make the grade quite easily, as they

possess some creative spark, no matter how crude, humble or obvious it might be.  Id.  Assessing whether a work is original "is a matter of law."  Society of Holy Transfiguration Monastery, 689 F.3d at 47.

In judicial proceedings, a certificate of copyright registration "constitutes prima facie evidence of copyrightability" and shifts to the defendant the burden "to demonstrate why the claim of copyright is invalid."  CMM Cable, 97 F.3d at 1513.  In those circumstances, "it is incumbent upon a putative infringer to establish that the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection."  Id.  Upon defendant's proof of lack of originality, the burden shifts back to the plaintiff to prove originality.  Id.  The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright.  Id.[4]

Berio published her work during the Congress on April 16-18, 2008, when she distributed copies of "Curso de Técnica Legislativa" with the Questionnaire and Checklist Guidelines.  See, Docket No. 175, pp. 28-31.[5]  She registered the work with the U.S. Copyright Office approximately

---

[4] Where, for example, the issue is whether the copyrighted work is original, "the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality."  CMM Cable, 97 F.3d at 1513.

[5] "Publication" is defined as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication."  17 U.S.C. § 101.  At trial, Berio stated that she published her work in 2008 but did not provide a specific date.  See, Docket No. 175, pp. 23, 32.  Her copyright registration certificate shows that publication occurred in 2008.  See, Plaintiff's Trial Exhibit 6; Docket No. 181, p. 54.  Because the only evidence of any acts of publication are Berio's testimony and her distribution of the Questionnaire and Checklist Guideline booklets at the 2008 Congress, the court assumes that she published her work at some point between April 16-18, 2008.  See, Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1167 (9th Cir. 2007)(explaining that the one-time right of first publication encompasses the choice of when, where, and in what form to first publish a work, which an author exercises and exhausts by publishing the work in any medium)(quotations and citations omitted).

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 8

two weeks after the five-year mark, on May 1, 2013.  Id.  The evidentiary weight to be accorded the certificate of a registration made more than five years after first publication "shall be within the discretion of the court."  17 U.S.C. § 410(c).  Within this timeline, the court considers the registration prima facie evidence of copyrightability and originality.  There is no persuasive argument or evidence that would raise any question as to the validity of the copyright covered by the registration certificate.  See, Norris Industries, Inc. v. International Tel. & Tel. Corp., 696 F.2d 918, 922 (11th Cir.), cert. denied, 464 U.S. 818 (1983)(district court may rely on U.S. Copyright Office's "expertise in the interpretation of the law and its application to the facts presented by the copyright application"); Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc., 772 F.Supp.2d 1029, 1032 (E.D.Wis. 2011)(considering registration certificate prima facie evidence notwithstanding late registration); Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F.Supp.2d 506, 515-516 (S.D.N.Y. 2003)(similar).

Flores argues that Berio's work is not original because it consists of a series of questions encompassing the logical thought process necessary for the drafting of any piece of legislation (Docket No. 182, p. 32).  The copyright statute "excludes from protection the processes and systems described in a work."  Situation Management Systems, Inc. v. ASP, 560 F.3d 53, 61 (1st Cir. 2009).  But the fact that a work describes processes does not make their expression noncopyrightable.  Id.  A party's creative choices in describing processes, including the works' overall arrangement and structure, are subject to copyright protection.  Id. (copyright protection available for expressions that describe ideas, processes or systems).[6]

---

[6] See also, Palmer v. Braun, 287 F.3d 1325, 1334 (11th Cir. 2002)(plaintiff psychologist's meditation manual designed to teach students to control their thoughts, "while undoubtedly the product of much time and effort, are, at bottom, simply a process for achieving increased consciousness.  Such processes, even if original, cannot be protected by copyright.  But [plaintiff's] expression [of the exercises] is protected by copyright")(emphasis in the original).

Flores suggests this test is not satisfied because Berio admitted during trial that the sections of the Checklist Guidelines pertaining to headers, titles, and statements of legislative intent in drafting legislation are not original, but rather, requirements set in the Constitution and laws of Puerto Rico (Docket No. 182, pp. 32-33). [7] And, he states that Berio's work follows "the same unoriginal logical order [used in] Section 15.4 of the Regulation of the Senate of Puerto Rico." (Docket No. 182, pp. 36-37).

Section 15.4 of the Regulation provides that Senate bills and resolutions shall include the Title, Statement of Motives (optional), Enacting (or Repealing) Clause, Enforcement Clause (if applicable) Effectiveness Clause, and Body, in that order (Docket No. 155-3, p. 2). But Berio's work surpasses this simple list, addressing myriad of issues that in her view should be considered part of the legislative drafting process, thus lending original depth to the analysis that from the standpoint of her work, should underlie or accompany that process. The copied portions of "Curso de Técnicas Legislativas" are an original compilation of minimal statutory and constitutional requirements combined with Berio's creative input, laying out in an easy-to-follow arrangement

---

[7] At trial, Berio was asked, and she answered:

> Q: Okay. Is the notion of having a header on a bill an original idea?
> A: No, but this is not a bill.
> Q: That isn't what I asked. I asked if the idea of having a header on a bill is an original idea of yours.
> A: No, it's a requirement. All bills have to have a header…
> Q: Okay. How about a title of the Act; is that an original idea of yours, to have a title of the Act on a piece of legislation?
> A: This is a constitutional requirement. It's not that I thought it up. And it had to be included precisely because it is one of the most important requirements…
> Q: Now turning to Page 5. How about this notion of having a statement of motives in a piece of legislation; is that an idea that came from you?
> A: This is not another idea of mine. This is a requirement which appears in the regulations."

See, Docket No. 176, pp. 20-22.

in a Questionnaire and Checklist Guidelines, Berio's original view on how best to approach and express the idea of legislative drafting.

In this way, Berio's work takes the very few provisions that deal with legislation crafting, combining them with matters such as appropriate vocabulary, syntax, style and order, as well as sources outside of legislation – Supreme Court decisions, Opinions of the Secretary of Justice, prior proposed bills, persons to be affected by contemplated legislation and its economic impact – to create an original expression of how best to prepare and draft legislation.  Berio made a choice of what is important and helpful, and put it together in her own words and structure.  The mere borrowing of elements from previous works "does not defeat copyrightability as long as the author has devised a new version of the work or has otherwise rearranged or transformed it so as to have made an original contribution."  <u>CMM Cable</u>, 97 F.3d at 1518.[8]

Flores claims that Berio's work is nothing more than a series of questions with no answers and no description of the questions (Docket No. 182, p. 37).  If he is arguing that the work is akin to an unprotected blank form because it has blank spaces, he is mistaken.  Established in the landmark case of <u>Baker</u> v. <u>Selden</u>, 101 U.S. 99, 107 (1879)("blank account-books are not the subject of copyright), the "blank form" doctrine holds that "a form that conveys no information and serves only to provide blank space for recording of information contains no expression or selection of information that could possibly warrant copyright protection."  <u>Kregos</u> v. <u>Associated Press</u>, 937 F.2d 700, 708 (2d Cir. 1991).  Accordingly, regulations of the U.S. Copyright Office exclude from copyright protection "[b]lank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are

---

[8] <u>See also</u>, <u>Lane</u> v. <u>First Nat. Bank of Boston</u>, 687 F.Supp. 11, 17 (D.Mass. 1988)(work protected, as "[t]he financial information as it existed before Lane arranged it in one data base was an unorganized … collection of notations …").

designed for recording information and do not in themselves convey information[.]"  37 C.F.R.

§ 202.1 (c).  Correspondingly, a writing that contains a selection of categories of information worth

recording, sufficiently original and creative to deserve a copyright as a compilation, does not lose

that protection "simply because the work also contains blank space for recording the information."

Kregos, 937 F.3d at 708.  Copyright protects the elements that owe their origin to the compiler:

the selection, coordination, and arrangement of information.  Id. at 709.[9]

Berio's work is not a series of blank forms, but questions to guide the reader on how best

to prepare and draft legislation, with accompanying blank spaces to write answers on, not unlike

the one examined in Edwin K. Williams & Co., Inc. v. Edwin K Williams & Co.-East, 542 F.2d

1053 (9th Cir. 1976) cert denied, 433 U.S. 908 (1977), in which the infringed work contained

pages of instructions preceding and following 31 pages of blank forms, one page for each day of

the month.  Id. at 1060.  One page of instructions, entitled "Monthly Sales Summary Explanation,"

began by advising the user to first learn how much it cost to open the door every morning, showing

the user how to calculate overhead by listing wages, rent, supplies, taxes, and ten other items; his

other money needs such as loan payment, equipment note payment, and service truck payment;

and the daily breaking even point, noting that successful dealers shot for 25% to 30% gross profit

on total retail sales.  Id.  The information was carefully explained in step-by-step procedures under

such headings as "know all your expenses."  The Court found that the work was not a blank

accounting book but was entitled to copyright protection.  Id. at 1061.

Berio's work relies on the same core model.  Blank spaces are not protected, but the

accompanying questions are, and those are the ones that were included in the PowerPoint without

---

[9] See also, Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc., 945 F.2d 509, 513 (2d Cir. 1991)
(selection implies "the exercise of judgment in choosing which facts from a given body of data to include …").

Berio's authorization.  Further, that the work is organized in the form of short questions does not deprive it of copyright protection.  Although, in general, "short phrases may not be subject to copyrightability," a short phrase may command copyright protection if it exhibits sufficient creativity.  Society of the Holy Transfiguration Monastery, 689 F.3d at 51-52.  As a result, a cliché or an ordinary word-combination by itself "will frequently fail to demonstrate even the minimum level of creativity necessary for copyright protection."  Salinger v. Random House, Inc., 811 F.2d 90, 98 (2d Cir. 1987).  Such protection, however, is available for the association, presentation, and combination of the ideas and thought which go to make up the author's composition, given that copyright law protects "the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words and the emphasis he gives to particular developments." Id.  Thus, although the ordinary phrase may be copied without fear of infringement, a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase.  And that is what happened with the PowerPoint, which includes verbatim or near verbatim portions of Berio's original work.

Following the same path, short, simple, declarative sentences beyond the category of fragmentary words and phrases are protected to the extent that they are not merely "names or titles or slogans."  Applied Innovations v. Regents of the University of Minnesota, 876 F.2d 626, 635 (8th Cir. 1989).  So too with questions.  See, Rubin v. Boston Magazine Co., 645 F.2d 80, 81-83 (1st Cir. 1981)("love scale" and "liking scale" consisting of 26 questions designed to elicit one's feeling about another is subject to copyright as an original form of expression; "of no significance" that the scales were in the form of questions, for the term "writing" as used in the Constitution and in the statute covers "sets of questions as well as other forms of expression").  Applying the same metric, Berio's questions are not titles or slogans in any real sense, but guides in a well thought

original approach to legislation drafting.  Therefore, irrespective of who has the burden of proof, the evidence shows that Berio's work is original, and her copyright valid.  See, Situation Management Systems, 560 F.3d at 61 (…"SMS's works, which include text, flowcharts, and illustrations explaining techniques for communication and negotiation, certainly demonstrate the requisite minimal degree of creativity for copyright protection")(internal quotations and citations omitted); Salinger v. Random House, Inc., 811 F.2d 90, 98 (1st Cir. 1987)(plaintiff's work considered protected as the passage in question displayed a sufficient degree of creativity regarding sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the threshold of required creativity).

Flores contends there is no actionable issue because the work allegedly infringed consists of non-copyrightable ideas that have merged with expression, which prevents the final product from being copyrightable (Docket No. 182, p. 33).  Copyright protects "the original expression of ideas but not the ideas expressed."  Situation Management Systems, 560 F.3d at 61.  As a result, "when there is essentially only one way to express an idea, the idea and its expression are inseparable and copyright is no bar to copying that expression."  Society of Holy Transfiguration Monastery, 690 F.3d at 53.  In those cases, the idea and its expression merge, such that allowing a party to copyright the expression would allow it to control the underlying idea, which copyright doctrine will not allow.  Id.

Berio's ideas on legislative drafting and technique are not limited to one expression.  These ideas are not at issue.  The idea of how best to draft a bill can be expressed in many ways.  Berio's work involves choices among different ways of expressing that idea.  Flores' testimony showed extensive knowledge of legislative processes and legislation drafting.  He stated that he had developed a lecture on this specific subject (Docket No. 176, p. 133).  And he described his own

original approach to the idea of drafting legislation, using creative examples of expression to illustrate the different components of this endeavor.  Id. at pp. 136.  Consequently, the notion that the two works here had to be written the same way because there was no other way to write them is not persuasive.  For that reason, the idea-expression merger argument fails.  See, Situation Management Systems, Inc., 560 F.3d at 61 ("…[T]o the extent that SMS's works teach a process or system for effective communication and negotiation, others may freely describe that process or system by using their own original expression …").

 With this backdrop, Berio must prove that Flores copied her copyrighted work "as a factual matter."  CMM Cable, 97 F.3d at 1513.  To do this, she may either present direct evidence of actual copying or, if that is unavailable, evidence demonstrating "probative similarity" and that Flores had access to the copyrighted work before the alleged infringement.  See, Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005)(applying evidentiary framework).[10]  Even if both showings are made, the trier of fact may nonetheless find no copying if the defendant shows "independent creation." CMM Cable, 97 F.3d at 1513.

 There is no direct evidence that Flores copied Berio's work.  On the contrary, Flores denied that he prepared the PowerPoint (Docket No. 176, p. 130; Docket No. 177, p. 30).  He stated that it was prepared by somebody in the Office of Advisers, not him, and that he had no role in the drafting of the document.  Id.[11]  No evidence contradicts this testimony.  Hence, Berio may rely on the indirect method to show copying, using probative similarity and prior access to her work.

---

[10] This degree of similarity is "somewhat akin, but different than, the requirement of substantial similarity that must be shown to prove copyright infringement."  T-Peg, 459 F.3d at 111.

[11] From Docket No. 176, p. 130:

  Q: If you recall, or if you know, who prepared this document [the PowerPoint]?
  A: I don't know who prepared it.
  Q: Do you know why this document was prepared?

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 15

### a.  **Probative Similarity**

Determining probative similarity "involves dissection of the work … to assess whether there are sufficient articulable similarities to justify a finding that the defendant has copied from the protected work." Concrete Machinery Co. v. Classic Lawn Ornaments, 843 F.2d 600, 608 (1st Cir. 1988).  By dissecting the accused work and identifying those features which are protected in the copyrighted work, "the court may be able to determine as a matter of law whether or not the former has copied aspects of the latter." Id.  On this account, out of the 92-slides that comprise the PowerPoint, 62 slides incorporate almost entirely, word-for-word, Berio's original material from the Questionnaire and Checklist Guidelines. See, "Plaintiff's Post-Trial Brief" (Comparative Table) (Docket No. 181, pp. 25-27, Comparing Berio's work, Plaintiff's Exhibit 3A, to the PowerPoint, Plaintiff's Exhibit 5A); Berio's Testimony (Docket No. 175, pp. 44-120 (same).[12]

---

A: It was prepared as part of the materials that were prepared by the Officer of Advisers of the President as a presentation on this subject.
Q: What materials do you understand would have been used to prepare this document?
A: I don't know because I don't know who prepared it or who made it.
Q: Okay.  What role, if any did you have in the drafting of this document?
A. None.

From Docket No. 177, p. 30:

Q: Okay.  Those slides [in the PowerPoint] were prepared by somebody?
A: Yes.
Q: And it is your testimony that they were not prepared by you?
A: Exactly.

[12] That the Questionnaire and Checklist Guidelines are part of the Course on Legislative Technique that also includes an explanatory section, does not deprive them of protection.  As Berio persuasively testified, and the court confirmed, the different parts of the work are complementary, and may be used independently. See, Docket No. 176, pp. 17, 33-34.  On the issue of copyright protection for separate parts of an author's work, see, Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 571-573, 586-589 (1994)(treating a single song from a collection of songs as a whole work for purposes of fair use); Hustler Magazine Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1154-1155 (9th Cir. 1986)(deeming 300-word parody a complete work even though it was part of 154-page magazine, as "[a] creative work does not deserve less copyright protection just because it is part of a composite work"); Roy Export Co. Establishment of Vaduz, Liechtenstein, Black, Inc., A.G. v. Columbia Broad. Sys. Inc., 503 F.Supp. 1137, 1145 (S.D.N.Y. 1980)(use of approximately one to two minutes from hour-plus long films quantitatively and qualitatively substantial).

In addition, the PowerPoint modifies textual portions from the original.  See, Docket Nos. 181, pp. 25-27 (identifying instances of copying and similarities between the works); Docket No. 175, pp. 44-121 (same).  For instance, *compare* "Who *will* benefit from the measure?" (Plaintiff's Trial Exhibit 3-A, p. 1)(emphasis added), *with* "Who *would* benefit from the measure?" (Plaintiff's Trial Exhibit 5-A, p. 20) (emphasis added); *and compare* "What is the assignment?  What is the *situation or issue* to be addressed" (Plaintiff's Trial Exhibit 3-A, p. 1) (emphasis added), *with* "What is the assignment?  What is the *issue or situation* to be addressed" (Plaintiff's Trial Exhibit 5-A, p. 18) (emphasis added).  See, Concrete Machinery Co., 843 F.2d at 608 ("the existence of only minor differences may itself suggest copying, indicating that the infringer attempted to avoid liability by contributing only trivial variations")(citing Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 619 (7th Cir. 1982)("superficial changes…may be viewed as an attempt to disguise an intentional appropriation")); Flomerics Ltd. v. Fluid Dynamics Intern., Inc., 880 F.Supp. 60, 62 (D.Mass. 1995)(same); United Telephone Co. of Missouri v. Johnson Pub. Co., Inc., 671 F.Supp. 1514, 1521 (W.D.Mo. 1987), *aff'd,* 855 F.2d 604 (8th Cir. 1988)(similar).[13]

Furthermore, the PowerPoint contains what Berio described as the same "grammatical error" found in the guidelines.  See, Berio's Testimony, Docket No. 175, pp. 117-118.  In this manner, the original work in the Spanish language reads, "Detectó alguna disposición *en conflictiva,*" which, in turn, was copied verbatim in the PowerPoint as "Detectó alguna disposición *en conflictiva.*" Id. (emphasis added).[14]  "[C]ourts have regarded the existence of common errors

---

[13] See also, 4 Melville B. H. & David Nimmer, *Nimmer on Copyright*, § 13.03[C], at p. 13.92.3 n. 185.1 (common errors evidence "common genealogy," that is, that the traits "are similar not because they have to be for functional reasons, but because of copying").

[14] This "error" "may only be appreciated in the original Spanish language exhibits that Berio submitted at trial.  See, Plaintiff's Trial Exhibit 3, and Plaintiff's Trial Exhibit 5.  To facilitate review, the relevant pages are included as Appendix IV (Berio's original work, line 7) and V (PowerPoint, line 1).  The court is aware that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 17

in two similar works as the strongest evidence of copying as a factual matter, sometimes creating

at least a prima facie case of copying." <u>See</u>, 4 Nimmer § 3.03[C], at pp. 13-92.2-13-92.3

("common errors evince probative similarity") (emphasis omitted); <u>Flomerics Ltd.</u>, 880 F.Supp.

at 62 (repetition of verbatim phrases and errors evidences copying); <u>United Telephone Co. of</u>

<u>Missouri</u>, 671 F.Supp. at 1521 ("one of the most significant evidences of copying is the copying

of errors"). There is probative similarity between the works. The PowerPoint retains more than

enough similarities to Berio's protected work "to mandate the conclusion that it is … the product

of copying." <u>Segrets, Inc.</u> v. <u>Gillman Knitwear Co., Inc.</u>, 207 F.3d 56, 62 (1st Cir. 2000).

**b. Access**

With probative similarity established, the inquiry turns to prior access, which concentrates

on whether the defendant had a reasonable opportunity to view or copy plaintiff's original work.

<u>See</u>, <u>Grubb</u>, 88 F.3d at 3 (addressing issue). Berio contends that Flores had access because he

attended the 2008 Congress, and thus received a copy of the distributed checklists and witnessed

her legislative techniques presentation (Docket No. 181, pp. 42-43). She placed Flores at the

Congress based on an attendance list prepared by "one of the advisors of the former Speaker of

the [H]ouse" and staff from the "Continuing Education Program of Interamerican University"

---

language." 48 U.S.C. § 864; <u>see also</u>, Local Civ. R. 5(g) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts"). Although Berio submitted certified translations of the checklists and PowerPoint (<u>see</u>, Plaintiff's Trial Exhibits 3-A and 5-A), the relevant phrases in both exhibits were translated as "Did you find any provision to be in conflict," which, of course, would be inconclusive to infer that Flores had access to the work. However, case law suggests that in copyright infringement disputes, courts may consider works not in the English language to gauge their similarities. <u>See</u>, <u>Guzmán</u> v. <u>Hacienda Records & Recording Studio, Inc.</u>, 2014 WL 6982331, *3 (S.D.Tex. Dec. 9, 2014), <i>aff'd sub nom.</i> <u>Guzmán</u> v. <u>Hacienda Records & Recording Studio, Inc.</u>, 808 F.3d 1031 (5th Cir. 2015)(comparing Tejano song lyrics in the Spanish language included in the original and allegedly infringing work). The court will follow that lead and compare the works before it as they exist in either language, as appropriate. Although the court cannot assess the Spanish language exhibits to determine what constitutes a grammatical mistake in that language, in the absence of a countervailing explanation the court takes Berio at her word. <u>See</u>, 4 <i>Nimmer</i>, § 13.03[C], at p. 13-92.2 (some "copyright proprietors intentionally insert errors into their works in order to verify that the substantial similarity of the work of another is the result of copying from [their] work").

(Docket No. 175, pp. 37-38).  Bell testified that she recognized Flores and saw him "at some point before the Congress," but did not see him during the event.  Like Berio, she stated that Flores attended the Congress relying on the same attendance sheet that Berio reviewed (Docket No. 176, pp. 58, 76, 78).

The attendance sheet was not admitted into evidence and was only allowed to refresh Flores's memory during cross examination.  See, Docket Nos. 176, pp. 146-158; 177, pp. 7-8.[15] He reviewed the attendance sheet, did not admit that he attended the event, and did not deny that he attended.  He did not remember.  See, Docket No. 176, p. 147 ("I don't remember having attended.  There was a lot of activity in the Legislative Assembly, conferences.  I had a lot of responsibilities"); Docket No. 177, p. 7 ("As I said previously, I don't remember having attended that conference.  I could have gone, I could have left, but I don't remember.  I saw that the Speaker of the House went to the conference, and I could have gone with him.  I don't know if I was accompanying him.  I mean, I can't assure you that -- of how I attended, if I attended.  I can't be sure of that "), p. 8 ("I repeat, I don't know if I went.  I mean, I could have gone.  I could have just gone in and out.  I could have attended.  I don't know"), p. 8 ("My answer is that I could have gone, I could have not gone.  I mean, it's just that I don't remember.  It's already been eight years from now").  This is not enough to show access.

The attendance sheet used to refresh memory seems more of a list of intended participation than one of actual participation.  Next to some names, it reads, "Will Not Participate" instead of

---

[15] The attendance list was not introduced into evidence because it was not disclosed during discovery.  Though not allowed into evidence, the court ordered the parties to submit the list and other documents used to refresh memory in order to preserve the record.  See, Docket No. 177, pp. 69-75.  Those documents were submitted at Docket No. 166.

"Did Not Participate" or "Did Not Attend" (Docket No. 166-1, pp. 18-24).[16]  Although it states

that 12 employees attended on Day 1, 18 employees on Day 2, and 70 Employees on Day 3

(Docket No. 166-1, p. 24), it does not identify the employees who attended or include a signature

section with individual signatures to confirm or verify the day and time of attendance.  Id. at pp.

25-31.  What is more, while 220 people attended the Congress, no attendee was called as a witness

to testify that he or she saw Flores in the activity.  Flores' testimony was credible.  But it was

ambiguous on this issue.  So, even though it is possible that he attended, a "bare possibility" that

he did so is not sufficient.  Grubb, 88 F.3d at 3.[17]  Speculation and conjecture is not enough.  Id.

Taking all of these elements into account, Berio did not establish that Flores attended the

Congress, received a copy of the protected material or saw and heard her lecture.  Given the lack

of previous access, the record does not support the conclusion that Flores copied Berio's work.

See, Grubb, 88 F.3d at 5-6 (dismissing infringement action for lack of access).

### 2.  Lectures

Berio claims that Flores presented and displayed the PowerPoint without her consent, and

without attributing or recognizing her authorship (Docket No. 181, p. 1).  Even though Flores

displayed some of the slides in the PowerPoint, the record does not show that he unlawfully

displayed Berio's work.  There is no evidence on which of the slides he specifically displayed, a

---

[16] See e.g., Docket No. 166-1, p. 20: Hon. Antonio Silva Delgado ("Will Not Participate"), Hon. José Concepción Hernández ("Will Not Participate"); p. 21: Hon. Carlos "Johnny" Méndez Núñez ("Will Not Participate"), Hon. Angel Peña Rosa ("Will Not Participate"), Hon. Norman Ramírez Rivera ("Will Not Participate"), Hon. Jorge Ramos Peña ("Will Not Participate"), Hon. Gabriel Rodríguez Aguiló ("Will Not Participate"); p. 22: Hon. Jorge Colberg Toro ("Will Not Participate"), Hon. José J. García Cabán ("Will Not Participate"), Hon. Sergio Ortiz Quiñones ("Will Not Participate"), Hon. Ferdinand Pérez Román ("Will Not Participate"), Hon. Ramón Reyea Oppenheimer ("Will Not Participate").

[17] See also, 4 Nimmer, § 13.02[A], 13-22 ("[R]easonable opportunity … does not encompass any bare possibility in the sense that anything is possible").

critical evidentiary gap, as approximately one third of the PowerPoint does not correspond to Berio's protected work.[18]

### 3.  **Senate's Website**

The PowerPoint was uploaded to the Senate's website.  Berio claims that Flores knew that the PowerPoint had been so uploaded and permitted it to remain in the internet until Berio requested that it be downloaded (Docket No. 181, p. 29, ¶ 32-g).  Flores testified that he had no role in the placement of the PowerPoint on the website (Docket No. 176, pp. 145-147; Docket No. 177, pp. 15, 21).  He stated that he had no control or responsibility over the website; he realized the PowerPoint was on the website only after he received Berio's demand letter; and in reaction to the letter, sent a letter to the President of the Senate and his Chief of Staff to request that it be taken down.  Id.

---

[18] Flores' Factual Version in the Pretrial Conference Report includes a statement that he did not use the PowerPoint presentation for any other purpose or activity than the two lectures offered to Senate employees and contractors on April 8, 2011 and September 7, 2011 (Docket No. 107, p. 6, ¶ 9).  During trial, he testified on direct examination (Docket No. 176, p. 133) and cross examination (Docket No. 177, p. 34) that he could have made reference to some of the slides (Docket No. 176, p. 133) or go over some of them (Docket No. 177, p. 34).  Berio did not contemporaneously or at any time thereafter object to Flores' testimony as being contrary to the Pretrial Conference Report, and did not ask him which of the slides he specifically displayed during the lectures.  The only questions about individual slides concerned the front and last slides of the PowerPoint, which display the title of the lecture and Flores' name and official title (Plaintiff's Exhibit 5A).  The slides do not identify him as author or lecturer.  For Berio, Flores' name in the slides means that he authored the PowerPoint because in her view, that is the practice and is so assumed in the community (Docket No. 176, p. 37).  Flores stated that his name was in the slides because he was the lecturer, and that the presentations bore the name of the lecturer, which changed even for a lecture on the same topic (Docket No. 176, pp. 126, 130-131, 158-159; Docket No. 177, p. 12).  He indicated that he had seen other names in the same slides (Docket No. 176, p. 161).  Considering the context, it is not necessary to evaluate whether reference to the lecturer's name in the first and last slides of the PowerPoint in these circumstances constitutes an attribution of authorship.  As discussed above, there is no direct or indirect evidence that Flores copied Berio's work, and it is uncertain which of the slides were displayed during the lectures.  Berio's counsel did ask Flores to compare the title of the lecture ("Drafting, Legislative Technique and Quality of the Law") with the title of the 2008 Congress ("First International Congress of Legislative Technique, the Legislative Technique and the Quality of the Law")(Docket No. 176, p. 163).  The terms "drafting," "legislative technique" and "quality of the law," however, consist of ideas in a title, and as such are non-copyrightable.  See, Enterprise Management Ltd. v. Warrick, 717 F.3d 1112, 1117 (10th Cir. 2013)(observing that when a work expresses an idea in the only way it can be expressed, courts deny those expression protection to avoid giving the author a monopoly over the underlying idea); Concrete Machinery, 843 F.2d at 606 (mere identity of ideas expressed by two works does not give rise to infringement action); 37 C.F.R. § 202.1 (a)(titles are not subject to copyright protection).

Berio counters that Flores's testimony that he had nothing to do with the PowerPoint being placed on the Senate's website is unbelievable, claiming that he either: (1) personally placed it on the website; (2) knowingly allowed others to place it; or (3) acted with "willful blindness" (Docket No. 181, p. 29).[19]  She argues that Flores chose the continuing legal education lecture subjects, and because the PowerPoint bore his name, he was the author and person responsible for the PowerPoint's placement on the website.  Id.  This way, only he had "standing" to ask the Senate to take it down.  Id.  And, she states that even if the court found Flores not responsible for the placement of the PowerPoint on the Senate's website, he is nonetheless liable because "he recklessly set in motion all events so that [ . . .] Berio's work was displayed there," which would not have happened "but for [his] actions or complete recklessness in dealing with the source of the [PowerPoint]."  Id. at p. 55.  To her way of thinking, this is buttressed by Flores' testimony that as part of his duties as Director of the Office of Advisors, he looked every night "for commentaries about matters going on in the Senate" in press websites, making it unbelievable that he "never looked into the Senate's internet page to see his [PowerPoint] there."  Id. at pp. 55-56 (emphasis omitted).  The court is not persuaded.

Neither Berio nor Bell knows who uploaded or gave the order to upload the PowerPoint to the Senate's website.  See, Docket No. 176, p. 8 (Berio was asked and answered "Q. [Y]ou do not know who actually uploaded the PowerPoint presentation up to the website of the Senate?  A. No."), 70-71 (Bell was asked and answered "Q. But the truth is you don't know who uploaded it, correct?  A. I don't know… Q. …The truth is you don't know who ordered it be uploaded; is that

---

[19] "Willful blindness" is a mental state that can be used to establish knowledge or intent in connection with contributory infringement.  See, BMG Rights Mgmt. (US) LLC v. Cox Communications, Incorporated, 881 F.3d 293, 308 (4th Cir. 2018)(so noting).  But this aspect pertains to secondary liability, and as discussed below, Berio has not invoked it as a basis to find Flores liable in the present case.

correct?  A. I don't know").  Nor is that all.  In the sequence of events, Flores credibly testified

that he did not prepare the PowerPoint and had no role in the drafting of the material.[20]  And in

like manner, he expressed without contradiction that he: (1) did not upload the PowerPoint on the

website; (2) had no role in that act; (3) had no control or responsibility over the website; (4) realized

that the PowerPoint was on the website after he received Berio's demand letter; and (5) thereafter

sent a letter to the President of the Senate and his Chief of Staff to request that it be removed from

the website.  See, Docket No. 176, pp. 144-145; 177, pp. 15, 21).  Simply put, the record is silent

on who authorized the uploading, or uploaded the material on the website.

As for the PowerPoint bearing Flores's name and title, this alone has little to no probative

value to show that he authorized, placed, or even "recklessly set in motion" a chain of events that

led to its placement on the Senate's website.  Compare the situation here with the one that the First

Circuit examined in Soc'y of Holy Transfiguration Monastery, Inc., 689 F.3d at 54-58, where,

contrary to what the evidence shows in the present case, the defendant was found liable in part

because he: (1) engaged in sufficient acts of authority and control over website server and its

contents; (2) was the owner of domain name; (3) admitted active involvement in posting contents

to server for public access; and (4) conceded having knowledge that a subordinate acting as his

agent was uploading materials to website and expressly authorized his acts.  In the end, Berio did

not show by a preponderance of evidence that Flores had any role in the placement of the

PowerPoint on the Senate's website so as to expose him to direct copyright infringement liability.

---

[20] As discussed earlier, beyond Flores' testimony on this topic, there is no evidence, direct or indirect, that he copied the material.

    **4.  CLE Document**

    Berio claims that Flores prepared the CLE Document (Docket No. 181, p. 25, ¶ 27).  The document includes Flores' name, title, biography, and the topics of discussion, all of which are substantially similar to Berio's Questionnaire.  See, Plaintiff's Trial Exhibit 12-A.  More precisely, it contains 42 questions which are, for all practical purposes, literal copies of Berio's Checklist Questionnaire's 43 questions in the same order that they appear in the Questionnaire.  Compare, Plaintiff's Exhibits 3A and 12A.  Flores, however, testified that he did not prepare or send the CLE Document to the Supreme Court; does not know who did so; and was not in charge of the Senate's Continuing Education Program (Docket No. 176, pp. 169, 173-176).  He said the document could have been prepared and sent by an employee of the Office of Advisors, by somebody else in the Senate, or by any person seeking to certify the legislative technique course for continuing legal education credit.  Id. at pp. 168-169, 173-176.  He did not remember anyone having asked for his permission to send the document.  Id. at p. 174.

    Berio argues that Flores' testimony denying being the author or having any knowledge about its existence or transmittal to the Supreme Court is incredible and tantamount to willful blindness (Docket No. 181, p. 29 ¶ 32i).  But having seen and heard the witness, the court cannot reject the testimony as false.  In addition, the facts are inconsistent with those that the First Circuit considered in Soc'y of Holy Transfiguration Monastery, Inc., 689 F.3d at 56-57, for there is no evidence that Flores: (1) engaged in specific acts of authority or control in the preparation or transmittal of the CLE Document; (2) was not in charge of the Senate's continuing education program; or (3) prepared, sent, or authorized similar documents in the past.  As with the PowerPoint posted on the Senate's website, Berio did not show by a preponderance of the evidence

that Flores prepared, submitted, or authorized the submission of the CLE Document to the Puerto

Rico Supreme Court in order to sustain a finding of direct copyright infringement against him.

## B. **Puerto Rico Law**

Berio seeks relief pursuant to the Puerto Rico Author's Moral Rights Act, Law No. 55 of

March 9, 2012, P.R. Laws Ann. tit. 31 §§ 1401j-1401ff ("PRAMRA").  The statute grants an

author of an original work the exclusive rights of attribution, withdrawal, integrity, and access.

P.R. Laws Ann. tit. 31 § 1401j(b).  It conceptualizes copyright as one comprised by "the interaction

of two rights:" one patrimonial, and one moral.  See, PRAMRA Statement of Motives (Plaintiff's

Post-Trial Brief Appendix), p. 12.  The moral right relies on the connection between the author

and her creation, sees the work as an extension of the author's personality (id., p. 13), and arises

at the time "the work is fixed by the author on a tangible medium of expression."  P.R. Laws Ann.

tit. 31 § 1401j(b).[21]

Under PRAMRA, a violation of moral right in copyright empowers the author or rightful

claimant to seek temporary or permanent injunctive relief, redress for damages, and financial

compensation.  See, P.R. Laws Ann. tit. 31 § 1401s.  In this way, as opposed to the Copyright

Act, which provides relief only for economic damages, the PRAMRA permits recovery for mental

suffering.  See, Torres-Negrón v. Rivera, 413 F.Supp.2d 84, 85-87 (D.P.R. 2006)(discussing moral

right under predecessor statute, Puerto Rico's Intellectual Property Act, Law No. 96 of July 15,

1988, as amended).[22]

---

[21] The moral right doctrine arises from the continental legal system, particularly the French.  See, PRAMRA Statement of Motives (Plaintiff's Post-Trial Brief Appendix), p. 12.

[22] Before the Spanish American War of 1898, Puerto Rico was subject to Spanish sovereignty.  At the time, the defense of copyrights in the Island derived from the Spanish Intellectual Property Law of 1879, and Articles 16, 428 and 429 of the Spanish Civil Code of 1888.  See, Reynal v. Tribunal Superior, 102 D.P.R. 260, 261, 2 P.R. Offic. Trans. 326 (1974)(addressing topic).  On July 25, 1898, during the Spanish American War, the United States invaded Puerto Rico, which became a territory of the United States.  See, Juan R. Torruella, *The Supreme Court and Puerto Rico:*

Monín Berio-Ramos v. Gerardo Flores-García
Civil No. 13-1879 (PAD)
Opinion and Order
Page 25

Berio claims moral damages for Flores violation of her rights of attribution and integrity, which purportedly inflicted physical and emotional damages (Docket No. 181, p. 76). Attribution includes "the right to be recognized as the author." P.R. Laws Ann. tit. 31 § 1401j(b)(1)(i). Integrity protects against "mutilation, deformation, or alteration of the work" and "the public presentation or distribution of a mutilated, deformed, or altered work that can undermine the legitimate interests or reputation of the author." Id. at § 1401j(b)(1)(iii)(A) and (B).

As mentioned earlier, the PowerPoint contains copy of Berio's original work without her knowledge, consent, or attribution of authorship, and in a mutilated or altered form. It all undermined her legitimate interest in maintaining the work unaltered. However, as already noted, there is no evidence that Flores copied the work.[23] As for use, the record does not show which part of the PowerPoint he displayed during the lectures to sustain a finding of unlawful use. And there is no evidence that Flores had any involvement in uploading the PowerPoint to the Senate's

---

*The Doctrine of Separate and Unequal*, Editorial de la Universidad de Puerto Rico, 1988, pp.19-24 (describing Spanish American War and its aftermath). In 1900, Congress enacted the Foraker Act, pursuant to which the Spanish Civil Code and Spanish legislation remained in effect in Puerto Rico under the conditions specified therein. See, Ossorio-Ruiz v. Srio. de la Vivienda, 106 D.P.R. 49, 52-53, 6 P.R. Offic. Trans. 65 (1977)(discussing issue). In 1902, the Puerto Rico Legislature enacted a Civil Code by reference to the Spanish Civil Code, albeit without incorporating Articles 428, 429 and other provisions. See, Reynal, 102 D.P.R. at 263, 2 P.R. Offic. Trans. 326 (addressing enactment). In 1930, it enacted a revised version of the Civil Code. See, Federal Deposit Insurance Corporation v. Arrillaga-Torrens, 212 F.Supp.3d 312, 331 n.2 (D.P.R. 2016)(summarizing Civil Code's background and relationship to the Spanish Civil Code of 1888). In 1988, it enacted Law 96. Based on Spanish legislation, Law 96 granted authors the exclusive prerogatives to attribute or retract authorship to him/herself, dispose of his/her work, authorize its publication and protect the integrity of the work as part of the author's moral right respecting copyright. See, Torres-Negrón, 413 F.Supp.2d at 85 (examining Law 96); PRAMRA Statement of Motives (Plaintiff's Post Trial Brief), p. 14 (acknowledging link between Law 96 and Spanish legislation). Article 26 of PRAMRA repealed Law 96. See, Statutory Text ("Act No. 96 of July 15, 1988, as amended, is hereby repealed"), in Plaintiff's Post Trial Brief Appendix, p. 24. Still, rather than shying away from Law 96 in its recognition of author's moral rights, in enacting PRAMRA the Legislature deemed it "meritorious for Puerto Rico to enjoy a more comprehensive special Act on the moral rights of authors." PRAMRA Statement of Motives (Plaintiff's Post Trial Brief), p. 15. For a historical account of these developments, see Pedro G. Salazar, *La protección legal del autor puertorriqueño*, InterJuris (2d Ed. 2013), pp. 1-8.

[23] It is apparent, however, that somebody else copied and mutilated Berio's work.

website or in preparing or sending the CLE Document to the Puerto Rico Supreme Court.  Under

these circumstances, he cannot be found directly liable under the PRAMRA.

### C. **Direct Liability**

The preceding sections focus on direct liability.  A defendant, however, may also be found

liable for copyright infringement on a direct or secondary theory of liability.  See, Ortiz-González

v. Fonovista, 277 F.3d 59, 62 (1st Cir. 2002)(noting distinction between direct infringement versus

contributory or vicarious infringement).  One infringes contributorily by intentionally inducing or

encouraging direct infringement, and infringes vicariously by profiting from direct infringement

while declining to exercise a right to stop or limit it.  See, Greenspan v. Random House, Inc., 859

F.Supp.2d 206, 219 (D.Mass. 2012)(defining terms)(quoting Metro-Goldwyn-Mayer Studios, Inc.

v. Grokster, Ltd., 545 U.S. 913, 930-931 (2005)).  Vicarious liability is an outgrowth of respondeat

superior, and extends beyond employer-employee relationships.  See, A&M Records, Inc. v.

Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001)(articulating formulation).  Still, Berio's theory

of the case focuses on direct liability, not secondary liability.[24]  With that in mind, the court will

not consider issues of potential secondary liability here.  See, Society of Holy Transfiguration

---

[24] According to the Pretrial Report, Berio's legal theories respecting liability were: (1) Defendants Flores and the
Senate copied, without authorization by Berio, Berio's copyrighted work in violation of the Copyright Act; (2)
Defendants Flores and the Senate distributed and used Berio's copyrighted work in violation of the Copyright Act;
and (3) Defendants Flores and the Senate altered, changed and/or mutilated Berio's registered work in violation of
PRAMRA (Docket No. 107, pp. 7-8).  In her Post-Trial Brief, she states that the evidence at trial showed that Flores
"copied, reproduced, distributed and publicly presented and displayed her copyrighted work without her permission
and without recognizing her authorship" in violation of the Copyright Act, and that he violated PRAMRA "every time
he used, reproduced, distributed and publicly presented and displayed plaintiff's work without attributing or
recognizing her authorship and also when he mutilated, deformed and altered Berio's work" (Docket No. 181, p. 8).
There is no reference to secondary liability as to Flores.

Monastery, Inc., 689 F.3d at 58 n.20 (not addressing arguments of secondary liability because plaintiff did not raise them).[25]

## IV.   CONCLUSION

For the reasons stated, the case is DISMISED.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of May 2020.

s/Pedro A. Delgado Hernández
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge

---

[25] Given this disposition, it is unnecessary to address Flores' alternate defenses to the infringement claim, **viz.** "fair use," "classroom exception," absolute legislative immunity, and qualified immunity.